N. N. CAPILI, Plaintiff,

v.

Ned SHOTT; B. L. Jackson, Jr.; E. G. Watkins; A. D. Coppinger, Sr.; H. Edward Steele; Bluefield Municipal Building Commission; Douglas M. Parker; American Medicorp Management Services, Inc.; David H. Gatherum; Thomas Mathew; Edward M. Bowles; and Bluefield Anesthesia Associates, Defendants.

Civ. A. No. 78–1009.

United States District Court,
S. D. West Virginia,
Bluefield Division.

May 5, 1978.

Paul S. Hudgins, Bluefield, W. Va., for plaintiff.

J. W. Feuchtenberger, Bluefield, W. Va., and Guy W. Perkins, Bluefield, W. Va., and Richard L. Hirshberg, Washington, D. C., for defendants.

MEMORANDUM OPINION AND ORDER

DENNIS R. KNAPP, Chief Judge.

Plaintiff instituted this action against defendants under the provisions of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and 15 U.S.C. § 1 *et seq.* The complaint alleges that defendants violated plaintiff's rights secured thereunder and prays for injunctive relief and monetary damages.

By former order of this court, the complaint was dismissed insofar as it pertained to the alleged violations under 15 U.S.C. § 1 *et seq.* Thereafter, the court advanced the matter for hearing on the merits of the remaining claims of the plaintiff. At the conclusion of the evidence adduced on behalf of the plaintiff, the defendants jointly and severally moved the court to dismiss the action pursuant to Rule 41(b), Federal Rules of Civil Procedure.

In view of the following Findings of Fact and Conclusions of Law, the motion to dismiss will be sustained.

## FINDINGS OF FACT

Plaintiff, N. N. Capili, is a physician specializing in anesthesiology and is duly licensed by the State of West Virginia to practice medicine. Defendants, Shott, Jackson, Watkins, Coppinger and Steele are the duly appointed members of the Board of Directors of the Bluefield Municipal Building Commission (Commission). The Commission is a public corporation created by ordinance of the City of Bluefield on May 25, 1976, pursuant to the authority conferred upon the City by Chapter 8, Article 33 of the Code of West Virginia, as amended.

The Commission is the owner and operator of the Bluefield Community Hospital (Hospital), a 200-bed care facility located in Bluefield, West Virginia. Douglas N. Parker is the Administrator of the Hospital and was at all times material to this action an employee of Medicorp Developers, Inc.

(Medicorp). Medicorp, a subsidiary of American Medicorp Management Services, Inc., was at all times material to this action charged with the responsibility of managing the Hospital, pursuant to a contract with the Commission. The Commission acquired the Hospital from Bluefield Sanatorium, Inc., a proprietary hospital, by purchase on November 19, 1976. Prior to the acquisition the medical staff of the hospital had consisted primarily of members of a medical partnership known as Doctors Fox, St. Clair, Rogers, et al. (Partnership).

Dissatisfied with services provided to the Hospital in the area of anesthesiology, the Commission had attempted for some time to assure "on call" services of anesthesiologists, as well as nurse-anesthetists, whenever surgery was performed in the Hospital. After the purchase of the Hospital by the Commission, the anesthesiology department was operated upon the same basis as previously, with the anesthesiologist for the Partnership, Dr. Gatherum, providing essentially all of the anesthesiology services rendered to physicians, although Dr. Mathew did perform some services for the surgeons.

The Joint Commission of Accreditation of Hospitals, in a recent annual review of the Hospital, had indicated a number of deficiencies present in the anesthesiology services rendered by the Hospital and that most of those deficiencies had existed for a number of years prior thereto.[1]

Under the previous owner of the Hospital, when the anesthesiologist was unavailable, either because of sickness, vacation or time limitations, surgery continued to be performed without an anesthesiologist in attendance. At the time of the acquisition of the Hospital by the Commission, Medicorp recommended that the Commission enter into exclusive contracts in all Hospital-based ancillary services, including anesthesiology. Hospital-based ancillary services are defined as radiology, pathology, anesthesiology and emergency room services.

---

1. During the most recent year for which figures are available, approximately 5000 surgical procedures were performed at the Hospital.

These are the services a hospital must guarantee as available to all patients using the hospital. Because the hospital patients do not select the physicians rendering these services and generally do not even know the names or qualifications of these physicians, the hospital has a greater burden of responsibility in assuring the proper quality and quantity of such services. In order to insure the availability of anesthesiologists on a 24-hour-per-day, seven-day-per-week basis, Medicorp recommended that an exclusive contract be entered into to provide these services if an adequate number of anesthesiologists could be found who would agree to be contractually bound to provide that coverage. The Commission concurred in this recommendation.

The Commission then undertook negotiations with the Partnership to provide these services, but while the latter agreed to provide total coverage of nurse-anesthetists, it would not agree to provide total anesthesiologist coverage because only one anesthesiologist was a member of the Partnership. Thus, the nurse-anesthetists would provide anesthesiology services for emergency surgery, surgery on week-ends and when the sole anesthesiologist was not available. This arrangement was essentially the same that had been provided in the Hospital under the previous owners, and since numerous deficiencies had been revealed by the Joint Commission under the old arrangement, the Commission and the professional management company felt that this coverage was inadequate to insure proper patient care. Therefore, no contract was entered into by the Commission with the Partnership.

In July, 1977, Dr. Gatherum approached the Commission with another alternative. He proposed associating two additional anesthesiologists with him and contracting with the Commission to provide exclusive anesthesiology services at the Hospital. After several months of negotiations, three anesthesiologists, including Dr. Gatherum, and a number of nurse-anesthetists under the professional corporation entity known as Bluefield Anesthesia Associates (Associates) agreed with the Commission to provide all of the anesthesiology services required by the Hospital on a 24-hour-per-day, 7-day-per-week basis.

The contract also provided that any physician on the medical staff of the Hospital could select any one of the three available anesthesiologists to perform services for his patient. Additionally, an anesthesiologist would be available at the Hospital within 30 minutes from the time such service was requested on a 24-hour-per-day, 7-day-per-week basis. It was testified that other advantages of the exclusive arrangement with the Associates included the efficient scheduling of surgery, the uniform selection and use of anesthesia equipment and gasses, as well as a delineation of responsibility for the rendering of the service itself.

In late September, 1977, Dr. Capili, whose qualifications as a physician and anesthesiologist are not in question in this action, applied for a position with the Partnership at a hospital owned by it in Welch, West Virginia, which at that time had no anesthesiologist on its staff. The Partnership referred the application to its Bluefield section, and Dr. Capili was thereafter extended an offer of employment by the Partnership. Dr. Capili at the time of his arrival in Bluefield was unemployed, but he had practiced anesthesiology at Doctors Memorial Hospital in Welch, West Virginia, which had closed, and he had also practiced some general medicine at Doctors Memorial Hospital and at Welch Emergency Hospital.

On October 3, 1977, Dr. Capili applied for temporary associate staff privileges at the Hospital, which application was referred to Dr. Gatherum, Chief of anesthesiology services at the Hospital. The application was initially denied by Dr. Gatherum. On October 12, 1977, the Commission and Associates entered into the exclusive contract for the providing of anesthesiology services by the Associates to the Hospital and the exclusive right to use the anesthesia facilities of the Hospital. Dr. Capili's application was thereafter denied because of the existence of the exclusive contract the Hospital had with the Associates, of which Dr. Capili was not a member.

It is important to note that the evidence showed that the Hospital would not have denied Dr. Capili temporary staff privileges to practice general medicine or any other area of the medical profession except anesthesiology. Indeed, the evidence showed, and the complaint alleges, that Dr. Capili's desire to be afforded temporary staff privileges was for the sole purpose of practicing his specialty of anesthesiology and that the only reason he was denied privileges was because of the existence of the exclusive contract between the Hospital and the Associates. Solely because of the exclusive contract, Dr. Capili complains that his rights have been abridged.

■ Dr. Capili testified that he had not applied to any other hospital in the area, but that he had received several other substantial offers from other hospitals, including Henry Ford Hospital in Detroit and a hospital in Indiana. He further testified that he was presently being paid $80,000 per year under a one-year contract with the Partnership, and that he was not practicing at all except for having provided some anesthesiology services at the Partnership's proprietary hospital in Welch, West Virginia. He also testified that the Commission had in no way invited or induced him to come to Bluefield. He asserted no claim of any racial discrimination and waived, through his counsel, his claims of any due process violation.[2]

Dr. Capili further testified that he felt that his civil rights had been violated by the exclusive contract, but he adduced no testimony whatsoever of any conduct on the part of the Commission or Associates other than their entering into the contract. Although Dr. Capili alleged that he had been invidiously discriminated against and that

the Associates had been pretensively preferred, he adduced no evidence in support of these contentions except the admitted fact of the exclusive contract.

In sum, the court finds as a matter of fact, as well as a matter of law, infra, that the defendants, or any of them, were not guilty of any conduct that abridged any rights secured to the plaintiff, N. N. Capili, under and by virtue of the Constitution of the United States or any laws of the United States.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of and the parties to this action. 42 U.S.C. § 1983; United States Constitution, Fourteenth Amendment; 28 U.S.C. § 1343.

■ 2. A physician, including the plaintiff, has no constitutional right to staff privileges at a public hospital, including Bluefield Community Hospital, merely because he is licensed to practice medicine. *Hayman v. City of Galveston,* 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927). See also, *Sams v. Ohio Valley General Hospital Association,* 413 F.2d 826, 827 (4th Cir. 1969).

■ 3. Defendant Hospital has a right to treat professionals differently, even if they are of the same calling, if there is a rational basis therefor. *Sams v. Ohio Valley General Hospital Association,* supra.

■ 4. A contract between the Hospital and some of its staff members to operate a certain specialized facility to the exclusion of other physicians, equally qualified, is not necessarily unreasonable or arbitrary, and may be justified in view of the ends to be accomplished thereby. *Annot.* 74 A.L.R.3d

---

**2.** Avenues to appeal the decision not to grant Dr. Capili temporary staff privileges were available to Dr. Capili. He did commence the appeal process in accordance with the hospital by-laws, but this suit was instituted before the appeal process was concluded. In the answers filed, it was asserted that a defense was available to the defendants by reason of Dr. Capili's

not having fully exhausted his administrative remedies. Dr. Capili in response to this assertion took the position that to do so would be a "useless act" and he was therefore not required under the law to exhaust the appeal process. The Court agrees with Dr. Capili on that particular point.

1272, citing 40 Am.Jur.2d *Hospitals and Asylums* § 8.

■ 5. In view of the evidence adduced, the court concludes that the defendant Hospital has administered the application of the plaintiff with fairness and the reason for denial thereof was based upon rationale compatible with the Hospital's responsibility and was unencumbered with irrelevant considerations. *Sosa v. Board of Managers of ValVerde Memorial Hospital*, 437 F.2d 173 (5th Cir. 1971).

6. The exclusive contract described in the evidence and the Findings of Fact of this memorandum was justified in view of the ends to be accomplished by the Hospital and Associates in providing proper care to surgical patients.

7. None of the plaintiff's rights secured under the Fourteenth Amendment to the Constitution of the United States and under the provisions of 42 U.S.C. § 1983 were abridged by the defendants, or any of them, as a result of the existence of the exclusive contract described in the evidence.

ORDER

In view of the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that the motion of the defendants to dismiss this action pursuant to Rule 41(b), Federal Rules of Civil Procedure, be, and the same is, granted.

It is further ORDERED that this action be dismissed with prejudice and stricken from the docket of this court.