**CARDIO–MEDICAL ASSOCIATES, LTD. and Thomas J. McBride, M.D. and Paul T. Cass, M.D. and C. Richard Schott, M.D. and Michael B. Goodkin, M.D., Plaintiffs,**

v.

**CROZER–CHESTER MEDICAL CENTER and James H. Loucks, M.D. Michael C. Boyd, William J. Breece, John F. Cramp, Esquire, Daniel R. Curran, Mary E. Dale, Conrad A. Etzel, M.D., Jeremiah A. Hartley, Joseph R. Layton, Reverend David A. MacQueen, Peter L. Miller, William B. Mitchell, Jr., Clarence R. Moll, Ph.D., J. Harold Perrine, Malcolm B. Petrikin, Esquire, and Bertram M. Speare, individually and as members of the Crozer-Chester Medical Center Board of Directors, and James Clark, M.D., Chief of Department of Medicine of Crozer-Chester Medical Center, and Daniel J. Marino, M.D., R. David Mishalove, M.D., Joel A. Krackow, M.D., Adri-**an S. Weyn, M.D., Peter Lavine, M.D., Michael Yow, M.D., and Ancil Jones, M.D. c/a Cardiology Associates of Delaware County.**

Civ. A. No. 81–3050.

United States District Court,
E. D. Pennsylvania.

March 15, 1982.

As Amended April 13, 1982.

**1068**

Howard Richard and Lyn B. Schoenfeld of Richard, Brian, DiSanti & Hamilton, Media, Pa., for plaintiffs.

John W. Wellman, Steven G. Brown of Petrikin, Wellman, Damico & Carney, Media, Pa., H. Robert Halper, Hope S. Foster, Mary Susan Philp of O'Connor & Hannon, Washington, D. C., for CCMC and James Clark, M.D.

H. Robert Fiebach, Roberta D. Liebenberg of Wolf, Schorr & Solis-Cohen, Philadelphia, Pa., for Cardiology Associates of Delaware County.

TABLE OF CONTENTS

I. Preliminary Statement .................... 1069

II. Standards Under Which Defendants' Motion Must be Decided .................. 1070

 A. Rule 12(c) ......................... 1070

 B. Summary Disposition of Cases in Federal Courts ........................... 1070

 1. Notice Pleading Policy .......... 1070
 2. Efficiency Policy .............. 1071
 3. Summary ..................... 1072

III. Plaintiffs' Sherman Act Allegations ......... 1072

 A. Sections 1 and 2 of the Sherman Act ... 1073

 1. Presence of Interstate Commerce .. 1074
 2. Substantial and Adverse Effect ... 1074
 3. Nexus Requirement ............ 1074
 4. Conclusion .................... 1076

 B. Standards for Reviewing Interstate Commerce Allegations ................... 1078

 C. Plaintiffs' Interstate Commerce Allegations............................... 1079

 D. Sufficiency of Plaintiffs' Interstate Commerce Allegations .................... 1080

 1. Presence of Interstate Commerce .. 1080
 2. Substantial and Adverse Effect on Interstate Commerce ........... 1082
 3. Nexus Between Defendants' Challenged Activities and Interstate Commerce ...................... 1083
 4. Conclusion .................... 1084

 E. Appropriate Relief ................... 1084

IV. Plaintiffs' Civil Rights Claims.............. 1085

 A. Section 1983 ....................... 1086

 1. Deprivation of a Federally Protected Interest .................... 1086
 2. Color of State Law ............ 1087

 B. Standards for Reviewing State Action Allegations .......................... 1088

 C. Plaintiffs' State Action Allegations ..... 1089

 D. Sufficiency of Plaintiffs' State Action Allegations .......................... 1090

 1. Nexus Requirement ............ 1091
 2. Symbiotic Relationship .......... 1091

 a. Specific elements .......... 1092

 (i) Receipt of Hill-Burton funds 1092
 (ii) Governmental regulation .... 1093
 (iii) Receipt of Medicare and Medicaid funds ................ 1093
 (iv) Tax-exempt status ........ 1094
 (v) Monopoly status .......... 1094

 b. Facts and circumstances test .. 1096

 E. Appropriate Relief ................... 1097

V. Conclusion ............................... 1098

## OPINION

JOSEPH S. LORD, III, Chief Judge.

### I. Preliminary Statement

This action is one of a burgeoning number of cases brought by physicians who have been denied full or specialized staff privileges at a particular hospital. Cardio-Medical Associates, Ltd., and its four physician members, filed this complaint against Crozer-Chester Medical Center (hereinafter referred to as "CCMC"), members of the CCMC Board of Directors, the Chief of the Department of Medicine at CCMC, and several individual doctors practicing cardiology under the name of Cardiology Associates of Delaware County.

Plaintiffs allege in Count I of their complaint that the denial to them of the opportunity to perform certain specialized cardiology procedures[1] at CCMC is the result of an unlawful conspiracy on the part of defendants which has restrained trade in violation of sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1, 2. In Count II of their complaint, plaintiffs further allege that the denial of the opportunity to perform these specific cardiology procedures is a violation of their fourteenth amendment rights. This violation, plaintiffs allege, constitutes a deprivation of a constitutionally protected property interest within the meaning of section 1983. 42 U.S.C. § 1983. Further, plaintiffs allege that defendants acted under color of state law when they denied the individual plaintiff physicians the right to practice the specified procedures. Finally, plaintiffs allege, also in Count II of their complaint, that their fourteenth amendment procedural due process rights were violated by defendants' failure to afford them a hearing at any time during the period of their exclusion from the performance of the specified cardiology procedures.

On the basis of these allegations, plaintiffs seek a declaratory judgment and a permanent injunction compelling defendants to permit plaintiffs to perform the specified procedures from which they allegedly have been wrongfully excluded. Further, plaintiffs seek an award of damages for the injuries allegedly sustained as a result of the denial of the opportunity to perform these procedures.

Pursuant to rule 12(c) of the Federal Rules of Civil Procedure, defendant CCMC, the members of the CCMC Board of Directors, and James C. Clark, M.D. moved for judgment on the pleadings with respect to both Counts I and II of plaintiffs' complaint.[2] Defendants assert that plaintiffs have (1) failed to state a claim for relief or establish that this court has subject matter jurisdiction under the antitrust laws and (2) failed to state a claim for relief or establish that this court has subject matter jurisdiction under the Constitution or section 1983.

For the reasons stated below, I grant defendants' motion for judgment on the pleadings as to both counts of plaintiffs' complaint and dismiss Count I without prejudice and Count II with prejudice. In deciding defendants' motion, I write at some length because of the increasing significance—to doctors, to hospitals, and to the federal courts—of this genre of cases. The large financial and administrative burdens imposed on hospital defendants and the courts as a result of the growing number of denial of hospital staff privileges cases, notwithstanding the infrequency with which plaintiffs prevail, is only one reason for this topic's current importance. Further, my analysis of the case law discloses no comprehensive discussion of the theories underlying and of the standards to be applied in deciding claims of this type. As a result, I write to explain fully my doubts that the ordinary denial of staff privileges claim states a federal cause of action in any case.

---

**1.** It is important to note that all four individual physician plaintiffs in this action have staff privileges at CCMC. According to the complaint, plaintiffs have been wrongfully excluded only from practicing a number of specialized privileges at the hospital.

**2.** Defendant Cardiology Associates of Delaware County filed a Joinder in the Motion for Judgment on the Pleadings so that all defendants are parties to the instant motion.

## II. Standards Under Which Defendants' Motion Must Be Decided

### A. Rule 12(c)[3]

A motion for judgment on the pleadings may be used to assert the failure of plaintiffs to state a claim upon which relief can be granted or the lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(2), (3). *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1368, at 688 (1969).

Motions for judgment on the pleadings should not be "lightly given." *Moss v. School District of Norristown*, 33 F.R.D. 518, 519 (E.D.Pa.1963). The applicable standard for ruling on a 12(c) motion has been summarized as follows in Professor Moore's treatise:

> Under the orthodox rule, a motion for judgment on the pleadings must be sustained by the undisputed facts appearing in all the pleadings, supplemented by any facts of which the court will take judicial notice. For the purposes of the motion, all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. Conclusions of law are not deemed admitted. Judgment on the pleadings may be granted only if, on the facts as so admitted, the moving party is clearly entitled to judgment.

2A J. Moore, *Moore's Federal Practice* ¶ 12.15, at 2343–44 (1981) (footnotes omitted). *Accord, Huntt v. Government of Virgin Islands*, 339 F.2d 309 (3d Cir. 1964); *Can-Tex Industries v. Safeco Insurance Company of America*, 460 F.Supp. 1022 (W.D.Pa.1978); *Commerce National Bank v. Baron*, 336 F.Supp. 1125 (E.D.Pa.1971); *M.L. Lee & Co. v. American Cardboard & Packaging Corp.*, 36 F.R.D. 27 (E.D.Pa.

1964). *See* C. Wright & A. Miller, *supra*, at §§ 1367–68.

### B. Summary Disposition of Cases in Federal Courts

The stringent requirements for the granting of a rule 12(c) motion for judgment on the pleadings are wholly consistent with the general disfavor in which all motions for summary disposition of cases are treated in federal courts. But, where appropriate, the Federal Rules of Civil Procedure mandate the summary dismissal of cases, even before any discovery is completed. *See generally* C. Wright & A. Miller, *supra*, at § 1369, at 698. This line between permissible and impermissible summary disposition of cases is determined in large part by the interaction of two competing policies: the "notice pleading" policy and the "efficiency" policy.

### 1. Notice Pleading Policy

The classic statement of what I have referred to as the notice pleading policy is provided by the Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957):

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules....

---

**3.** Rule 12(c) reads as follows:

(c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable op-

portunity to present all material made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(c).

Because neither party has attempted to introduce materials outside the pleadings, the second sentence of rule 12(c) does not apply in this case. My decision is therefore based strictly on a reading of plaintiffs' complaint, in the light most favorable to plaintiffs, together with any facts of which I am entitled to take judicial notice.

*Id.* at 47–48, 78 S.Ct. at 102–03. *Accord, Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Deakyne v. Commissioners of Lewes,* 416 F.2d 290 (3d Cir. 1969).[4]

The Supreme Court has also made clear that this notice pleading policy applies with full force in the context of complex antitrust cases:

We have held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [*Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02 (footnote omitted).] And in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," [*Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) ], dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.

*Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). *Accord, Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 896 (3d Cir. 1977).

### 2. Efficiency Policy

Judge Weinfeld of the Southern District of New York provides an excellent statement of what I refer to here as the efficiency policy. In a suit by employees and their union against the trustees of an ERISA pension plan challenging certain aspects of administration of that plan, the court dismissed plaintiffs' claims of alleged imprudent investment by the trustees on the ground that they failed to state a cause of action. Judge Weinfeld wrote:

This is no matter of technical pleading. Defendants should not be put to the heavy burden and expense of litigation unless a properly pleaded complaint requires them to defend. This is not a case where plaintiffs cannot ascertain whether there is a factual basis to support a proper claim. . . .

It is not sufficient to say that appropriate allegations to plead a sufficient cause of action will be made after pre-trial discovery. *Conley v. Gibson,* pressed by plaintiffs, does not authorize parties to use an insufficient complaint with a conclusory allegation as a hunting license to discover whether in fact a viable claim may be alleged. The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made—not to discover whether a claim exists.

*American Communications Ass'n v. Retirement Plan for Employees of RCA Corp.,* 488 F.Supp. 479, 483–84 (S.D.N.Y.) (footnotes omitted), *aff'd mem.* 646 F.2d 559 (2d Cir. 1980).

In the proper circumstances, this efficiency policy has been deemed sufficiently powerful to override the notice pleading policy discussed above. *See, e.g., Kadar Corp. v. Milbury,* 549 F.2d 230, 233, 233 n.2 (1st Cir. 1977); *Cohen v. Illinois Institute of Technology,* 524 F.2d 818, 827 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48

---

**4.** Plaintiffs rely principally on *Foman,* a case distinguishable from the instant action. In *Foman,* plaintiff was seeking to amend her complaint to provide for recovery on a *quantum meruit* basis, as opposed to the purely contractual claim originally asserted which the district court held barred by the statute of frauds. *Foman* and the other cases in this line of authority, therefore, stand for the limited proposition that mere technicalities should not prevent the district court from deciding litigation on the merits. *See also Kauffman,* 420 F.2d at 1276.

On the other hand, defendants in this case argue that plaintiffs have failed to allege any facts vesting this court with jurisdiction to hear their claims. If defendants are correct that, as a matter of law, plaintiffs have not, *and cannot,* assert facts sufficient to vest this court with jurisdiction, summary disposition of plaintiffs' claims is not foreclosed by this line of precedent. A holding by this court that plaintiffs' jurisdictional allegations are fatally deficient as a matter of law, and can not be corrected, is in fact a disposition on the merits and is therefore wholly consistent with the *Foman* line of precedent. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230 ("The rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' ").

L.Ed.2d 187 (1976); *McLaughlin v. Copeland*, 455 F.Supp. 749, 753 (D.Del.1978), aff'd mem. 595 F.2d 1213 (3d Cir. 1979); *EEOC v. Carter Carburetor*, 76 F.R.D. 143 (E.D.Mo.1977), *vacated on other grounds*, 577 F.2d 43 (8th Cir. 1978), *cert. denied*, 439 U.S. 1081, 99 S.Ct. 865, 59 L.Ed.2d 52 (1979). *See generally Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975); Kirkham, *Complex Civil Litigation—Have Good Intentions Gone Awry?*, 70 F.R.D. 199, 204 (1976); Pollack, *Discovery—Its Abuse and Correction*, 80 F.R.D. 219 (1978); *Renfrew, Discovery Sanctions: A Judicial Perspective*, 67 Calif.L.Rev. 264, 266–67 (1979).

*3. Summary*

■ Upon an analysis of the two competing policies discussed above, the following synthesis emerges from those precedents. Generally, summary disposition of claims on the merits is disfavored. If a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motions for judgment on the pleadings should be denied. Nevertheless, a district court judge still must scrutinize complaints to ensure that they contain even these most basic and minimum allegations. This scrutiny is particularly appropriate in a case in which a party questions the jurisdiction of the court because of the federal trial judge's special responsibility to determine that there is jurisdiction in each case.

■ When the district court judge determines that the complaint fails to meet even the minimal notice pleading requirements of the federal rules, he has a number of options. In most circumstances, the court should permit a plaintiff to file an amended complaint and/or to conduct limited discovery in order to supplement his initial allegations. *See Kauffman*, 420 F.2d at 1276 (amendments pursuant to rule 15(a) should be freely permitted).

■ Notwithstanding the liberal amendment provisions of the federal rules, summary dismissal of a facially deficient complaint, without leave to amend or conduct discovery, is appropriate in the following situations: (1) if "the merits of the controversy can be fairly and fully decided" without amendment or discovery, as, for example, if plaintiff's complaint is legally deficient and, after inquiry by the court, plaintiff can suggest no way in which it can be made legally sufficient, *see* C. Wright & A. Miller, *supra*, at § 1369, at 698; note 4 *supra*; (2) if there is a valid reason for refusing such a request, such as delay, bad faith, or dilatory motives, *see Foman*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222; or (3) if the pleadings are wholly inadequate and discovery would serve no demonstrably useful purpose.[5]

Defendant's motion for judgment on the pleadings is decided in accordance with this synthesis of applicable precedents, rules, and scholarly analyses.

*III. Plaintiffs' Sherman Act Allegations*

Plaintiffs' Count I allegations that defendants' conduct violated the antitrust laws raise complex jurisdictional issues under the Sherman Act. Essentially, plaintiffs allege that the denial to them of the opportunity to perform certain specialized cardiology procedures at CCMC is the result of an unlawful conspiracy on the part of

---

**5.** *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir. 1977) (reverses district court's grant of summary judgment on ground that plaintiffs should be granted opportunity to develop evidence of actionable antitrust conspiracy in discovery stating "we have said that *where the facts are in possession of the moving party* a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (emphasis supplied), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Costlow v.*

*United States*, 552 F.2d 560, 564 (3d Cir. 1977) (reverses district court grant of summary judgment without argument or discovery when latter was being diligently pursued and when facts on employment status of employee were within the exclusive control of defendant); *Ward v. United States*, 471 F.2d 667, 670–71 (3d Cir. 1973) (reverses district court grant of summary judgment where "facts respecting possible operational negligence are solely in possession of [defendant]").

defendants that has restrained trade in violation of sections 1 and 2 of the Sherman Act. Defendants argue, however, that plaintiffs have failed to state a claim for relief or to establish that this court has subject matter jurisdiction under the antitrust laws because of the absence of sufficient allegations to establish the requisite relationship with interstate commerce.

### A. Sections 1 and 2 of the Sherman Act

Section 1 of the Sherman Act declares that contracts, conspiracies, and combinations in restraint of trade or commerce among the states are illegal.[6] In addition, section 2 prohibits attempts to monopolize the sale of products or services in trade or commerce among the states.[7]

█ Coverage of the Sherman Act, legislation passed pursuant to the authority granted Congress by the commerce clause, extends both to activities that are actually *in* interstate commerce and to activities that, though purely intrastate in character, nevertheless substantially *affect* interstate commerce. *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980); *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954); *At-*

*lantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 435, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932). Although the distinction between those activities that are "in" commerce and those that merely "affect" commerce is still important for some purposes under the antitrust laws, "[i]t can no longer be doubted ... that the jurisdictional requirement of the Sherman Act may be satisfied under either the 'in commerce' or the 'effect on commerce' theory." *McLain*, 444 U.S. at 242, 100 S.Ct. at 509. *Accord*, *Hospital Building Co.*, 425 U.S. at 743, 96 S.Ct. at 1851–52; *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194–95, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974); *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 235–37, 68 S.Ct. 996, 1005–06, 92 L.Ed. 1328 (1948); *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 720 (10th Cir. 1981) (*en banc*); *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 896 (3d Cir. 1977); *Barr v. National Right to Life Committee, Inc.*, No. 79–420–OLR–CIV–y (M.D.Fla. July 23, 1981); *Grigg v. Blue Cross and Blue Shield of Michigan*, 1980–2 Trade Cases ¶ 63,500, at 76,665–66 (E.D.Mich.1980); *Robinson v. Magovern*, 456 F.Supp. 1000, 1004 (W.D.Pa. 1978); *De Gregorio v. Segal*, 443 F.Supp. 1257, 1267 (E.D.Pa.1978).[8]

█ In order to survive a motion for judgment on the pleadings under the stan-

---

**6.** Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1 (1976).

**7.** Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished

by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2 (1976).

**8.** I note that plaintiffs appear to rest their interstate commerce allegations on the "affecting commerce" prong of the above analysis. I therefore consider the sufficiency of these allegations under that approach. This is wholly consistent with the majority of other antitrust cases involving hospitals considering this issue. *E.g., Riggall v. Washington County Medical Soc'y*, 249 F.2d 266, 269 (8th Cir. 1957), *cert. denied*, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530 (1958); *Barr*, slip op. at 6; *Sokol v. University Hospital, Inc.*, 402 F.Supp. 1029, 1030 (D.Mass.1975); *Nankin Hospital v. Michigan Hospital Service*, 361 F.Supp. 1199, 1210 (E.D. Mich.1973).

**1074**

dards enunciated in part II of this opinion and the applicable precedents under the affecting commerce theory of interstate commerce, plaintiffs' complaint must contain factual allegations that, if proved, would sustain each of three findings: (1) the *presence* of interstate commerce; (2) the existence of a *substantial and adverse effect* on interstate commerce, and (3) the requisite *nexus* between the challenged activities of defendants and the identified element of interstate commerce. Failure to allege sufficient facts on any one of these jurisdictional prerequisites requires dismissal of plaintiffs' complaint.

*1. Presence of Interstate Commerce*

In order to invoke the jurisdiction of the district court, plaintiffs' complaint must identify specifically the interstate commerce at issue in this case. "Although the cases demonstrate the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless *the relevant aspect of interstate commerce is identified*; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce." *McLain*, 444 U.S. at 242, 100 S.Ct. at 509. (emphasis supplied).

*2. Substantial and Adverse Effect*

Plaintiffs' complaint additionally must contain *specific factual* allegations that, if proved, would demonstrate that the alleged restraint "substantially and adversely affects interstate commerce." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974). *Accord, Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); *Mandeville Island Farms, Inc. v. American Crystal*

*Sugar Co.*, 334 U.S. 219, 234, 68 S.Ct. 996, 1005, 92 L.Ed. 1328 (1948); *Doctors, Inc. v. Blue Cross of Greater Philadelphia*, 490 F.2d 48, 51–53 (3d Cir. 1973) (collecting cases); *Grigg v. Blue Cross and Blue Shield of Michigan*, 1980–2 Trade Cases ¶ 63,500, at 76,666 (E.D.Mich.1980).[9]

*3. Nexus Requirement*

Plaintiffs' complaint must also contain factual allegations that, if proved, would demonstrate the existence of a logical nexus between the challenged activities of defendants (in this case, denying plaintiffs the right to practice specialized cardiology procedures) and the effect on the relevant channel of interstate commerce discussed previously. This final and most significant jurisdictional prerequisite has its roots in a long line of Supreme Court precedent.

In *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), the operator of a small hospital in Raleigh, North Carolina brought suit against Rex Hospital alleging that Rex had conspired with others to block a proposed expansion of plaintiff's hospital and to monopolize hospital services in Raleigh. The Supreme Court reversed the district court's dismissal finding that the complaint satisfied the Sherman Act's "effect on commerce test." A major focus of the Court's opinion was the adequacy of the nexus between the challenged activity by defendant and the relevant channels of interstate commerce identified by plaintiff. *See Hospital Building Co.*, 425 U.S. at 742 n.1, 743–44, 96 S.Ct. at 1851 n.1, 1851–52.

A cornerstone of the Court's *Hospital Building Co.* opinion was its earlier decision in *Burke v. Ford*, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967). The district court in *Burke* had dismissed the plaintiff liquor retailers' complaint alleging unlawful re-

---

**9.** Some courts phrase this test in an alternative fashion, but the differences between the various formulations are of little practical significance. *E.g., McLain*, 444 U.S. at 246, 100 S.Ct. at 511 (the effect must be shown "as a matter of practical economics" to be "not insubstantial"); *Hahn v. Oregon Physicians' Service*, 508 F.Supp. 970 (D.Or.1981) (following *McLain*);

*Searer v. West Michigan Telecasters, Inc.*, 381 F.Supp. 634, 640–41 (W.D.Mich.1974) ("jurisdiction under the Sherman Act exists only as to agreements which 'directly and substantially' affect interstate commerce; the connection cannot be merely 'incidental', 'inconsequential', 'remote' or 'de minimis'."), *aff'd mem.* 524 F.2d 1406 (6th Cir. 1975).

straint of interstate commerce by the defendant liquor wholesalers who had divided the Oklahoma liquor market into distributional territories. The Supreme Court reversed the court of appeals affirmance because of the substantial volume of liquor in interstate commerce and, most critically, because of the logical relationship between defendants' division of an intrastate market and that interstate commerce. *See Burke*, 389 U.S. at 322, 88 S.Ct. at 444.

*Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), although it involved the "in commerce" jurisdictional test, rather than the "effect on commerce" test, also sheds light on the nexus issue. *Goldfarb* involved the challenge by real estate purchasers to the Virginia State Bar's minimum fee schedule for real estate title searches. The Supreme Court held that, because an attorney's services are an "integral" and "inseparable" part of interstate real estate financing, the jurisdictional interstate commerce requirement was met. "The necessary connection between the interstate transactions and the restraint of trade provided by the minimum-fee schedule is present because, in a practical sense, title examinations are necessary in real estate transactions to assure a lien on a valid title of the borrower." *Goldfarb*, 421 U.S. at 783–84, 95 S.Ct. at 2011.

The Court's recent *McLain* decision, involving a challenge by real estate purchasers to alleged price fixing by brokers in the New Orleans area, reaffirms the importance of the nexus requirement. Defendants' pretrial motion to dismiss on jurisdictional grounds was granted by the district court and affirmed by the court of appeals as a result of their focus on *Goldfarb's* "integral and inseparable" rationale. The Supreme Court reversed, finding that the lower courts' reliance on *Goldfarb*, which involved only the "in commerce" test, was incomplete. The Court stated the applicable test for the nexus requirement in the jurisdictional inquiry as follows:

> To establish jurisdiction a plaintiff must allege the critical *relationship* in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce....
>
> ....
>
> ... To establish federal jurisdiction in this case, there remains only the requirement that *respondents' activities which allegedly have been infected by a price fixing conspiracy* be shown "as a matter of practical economics" to have a not insubstantial effect on the interstate commerce involved.

*Id.* 444 U.S. at 242, 246, 100 S.Ct. at 509, 511 (emphasis supplied).

Plaintiffs cite two other sentences from *McLain* in support of their position:

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful.

*McLain*, 444 U.S. at 242–43, 100 S.Ct. at 509–10. This language has been interpreted to broaden "significantly ... the effect-on-commerce jurisdictional test by requiring proof of a nexus merely between interstate commerce and the defendants' general business activity rather than the defendant's allegedly unlawful conduct." Comment, *The Interstate Commerce Test for Jurisdiction in Sherman Act Cases and Its Substantive Applications*, 15 Ga.L.Rev. 714, 715 (1981). *Accord, Bain v. Henderson*, 621 F.2d 959, 961 n.2 (9th Cir. 1980); *Western Wastes Systems v. Universal Waste Control*, 616 F.2d 1094, 1097 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980). I reject this interpretation and, in the absence of any binding

Third Circuit precedent, choose to follow the Tenth Circuit's lead, explicated below, on this issue. *See Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 721–24 (10th Cir. 1980) (*en banc*).

Within the context of the facts and entire opinion of *McLain*, the Court must have been referring to the *challenged activities* of defendants and not the brokers' overall business activities, as suggested by the student comment and the Ninth Circuit cases. The reference to "particularized showing" was merely intended as an affirmation of the earlier holdings in *Hospital Building Company, Burke*, and *Goldfarb* that, for jurisdictional purposes, a plaintiff is under no obligation to make a particularized showing:

> In other words, an elaborate analysis of interstate impact is not necessary at the jurisdictional stage, only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce. The emphasis was intended to be that a 'particularized' showing is not necessary, not that a showing of a nexus between unlawful conduct and effect is unnecessary."

*Crane*, 637 F.2d at 723. I therefore decline to hold that the Supreme Court squarely reversed the holdings of a fourteen-year-old-line of precedent without even mentioning that such a dramatic shift in policy was occurring.[10]

*4. Conclusion*

■ At this point in my analysis of the substantive prerequisites for jurisdiction in a Sherman Act case, a crucial issue arises. In order to vest a federal court with jurisdiction, plaintiffs must (1) identify a relevant channel of interstate commerce (2) substantially and directly affected (3) by the allegedly improper activities of defendants. The crucial issue is whether the "relevant channel of interstate commerce" requirement in denial of hospital staff privileges cases relates to plaintiffs' or defendants' activities, or both. I hold that, in any denial of hospital staff privileges case, the only relevant jurisdictional inquiry involves a determination of whether the defendant hospitals' denial of staff privileges to the plaintiff physician substantially and directly affects the *plaintiff's* activities in interstate commerce.

My survey of the case law discloses a virtual lack of discussion of this issue. Some courts reviewing plaintiffs' factual allegations or the evidence in a particular case routinely mention both defendants' and plaintiffs' activities in interstate commerce during the jurisdictional inquiry. *See, e.g., Stone v. William Beaumont Hospital*, No. 79–74212 (E.D.Mich. Aug. 17, 1981); *Robinson v. Magovern*, 521 F.Supp. 842 (W.D.Pa.1981).

More frequently, courts analyze only the plaintiffs' activities in interstate commerce, without any explanation of why that approach is adopted. *See, e.g., Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (plaintiff satisfied jurisdictional element of Sherman Act by alleging that it purchases a large percentage of its medical supplies from out-of-state manufacturers, that it attracts a significant number of patients from out-of-state, that it obtains a substantial portion of its revenues from out-of-state sources, and that it plans to finance the construction of a new facility through the use of out-of-state lenders); *Wolf v. Jane Phillips Episcopal-Memorial Medical Center*, 513 F.2d 684, 688 (10th Cir. 1975) (facts supporting jurisdiction over

---

**10.** I also concur in the *Crane* court's reasoning that an allegation that defendants' overall business has a generalized effect on interstate commerce is neither a necessary nor a sufficient condition to vest a district court with Sherman Act jurisdiction:

> It is not necessary because even the purely local activity of a completely local business falls within the Act's reach if it appreciably affects a channel of commerce demonstrably interstate in character .... [I]t is not a sufficient condition because even though the defendant's overall business may impact interstate commerce greatly, the challenged activity may in every practical economic sense be unrelated to interstate commerce.

*Crane*, 637 F.2d at 723–24.

Sherman Act claim found insufficient when plaintiff alleges only that his business involves interstate commerce in general; no suggestion that defendants' conspiracy threatens plaintiff's purchase of interstate goods or that the flow of goods in interstate commerce would be affected in any way by plaintiff's exclusion from defendants' medical staff); *Doctors, Inc. v. Blue Cross of Greater Philadelphia*, 490 F.2d 48 (3d Cir. 1973) (jurisdiction under Sherman Act sustained when plaintiff alleged that it purchased a large volume of interstate goods and that its ability to continue to purchase such goods was jeopardized by defendant's actions); *Riggall v. Washington County Medical Society*, 249 F.2d 266, 268 (8th Cir. 1957) (plaintiff's Sherman Act complaint dismissed because of insufficient allegations that plaintiff's business involved or affected interstate commerce), *cert. denied*, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530 (1958); *Hahn v. Oregon Physicians' Service*, 508 F.Supp. 970, 974 (D.Or.1981) (plaintiffs' Sherman Act claims dismissed on jurisdictional grounds as a result of finding that "plaintiffs' interstate activities are so insubstantial" that "defendants' business activities could not 'as a matter of practical economics,' substantially affect them."); *Nankin Hospital v. Michigan Hospital Service*, 361 F.Supp. 1199, 1210 (E.D.Mich.1973) (plaintiff's Sherman Act complaint dismissed because of finding that plaintiff "is not engaged in interstate commerce" and did not demonstrate "that its sale of hospital services has any effect on interstate commerce").

Only one published decision discusses this critical issue in any detail. In *Nara v. American Dental Ass'n*, 526 F.Supp. 452 (W.D.Mich.1981), the court explained why it would consider only plaintiff's involvement in interstate commerce:

> The issue raised by defendants' motions is whether defendants' conduct has substantially affected interstate commerce. If not, this court cannot exercise jurisdiction over the claims asserted by plaintiff under The Sherman Act.... It should be noted that the interstate commerce in question here consists of the extent of plaintiff's practice of dentistry.... It does not concern the generalized interstate activities of any of the defendants. Plaintiff has spent much effort to demonstrate that the ADA, for example, is a nationwide association of which the state and local organizations are constituent members. What is relevant is not the interstate character of defendants' activities, but the effect that the objectionable restrictions have on interstate commerce.... Of necessity, therefore, one must look to the extent to which plaintiff is engaged in interstate commerce.

*Id.* at 455 (citations omitted).

I subscribe fully to the views expressed by the *Nara* court. As a matter of logic, the extent of defendants' activities in interstate commerce is irrelevant in a denial of hospital staff privileges case. For example, in this case, it is the effect on plaintiffs as a result of the denial to them by defendants of the right to practice cardiology procedures at CCMC that is the appropriate source of concern under the antitrust laws. The extent of defendants' involvement in interstate commerce is irrelevant for the purposes of this lawsuit because their denial of staff privileges to plaintiffs has no possible effect on their own activities in interstate commerce; the only potential effect relates to plaintiffs' practice of medicine.[11]

---

**11.** In analyzing this issue, I found a useful analogy in various cases under the Sherman Act involving refusals to deal. When a hospital denies staff privileges to a physician, it has, in effect, refused to deal with that doctor. In reference to these cases, the plaintiff's complaint must contain allegations detailing plaintiff's business in or affecting interstate commerce. *See, e.g., Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). Although the effect that the "nondealing" defendant's activities has on plaintiff's business in interstate commerce is highly probative, the defendant's general business activities in interstate commerce are entirely irrelevant. Thus, in both types of cases, the only relevant channel of interstate commerce that could be substantially affected by defendants' challenged activities involves the plaintiffs', and not the defendants', activities in interstate commerce.

In sum, unless plaintiffs' complaint contains factual allegations that, if proved, would satisfy all three jurisdictional requirements—presence of interstate commerce, substantial effect on interstate commerce, and nexus between defendants' challenged activities and plaintiffs' activities in interstate commerce—defendants are entitled to judgment on the pleadings.

### B. Standards for Reviewing Interstate Commerce Allegations

Before proceeding to a discussion of the sufficiency of plaintiffs' interstate commerce allegations under the applicable legal precedents, I briefly review the specific standards used by federal courts making such an inquiry. Of course, these standards merely supplement the standards discussed in part II of this opinion.

As a result of the limitations on the scope of federal judicial power that inhere in article III of the Constitution, it is well established that the jurisdiction of a federal court can never be presumed. *Smith v. McCollough*, 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682 (1926); *Hanford v. Davies*, 163 U.S. 273, 16 S.Ct. 1051, 41 L.Ed. 157 (1896). As emphasized by former Chief Judge John Lord in *Valanga v. Metropolitan Life Insurance Co.*, 259 F.Supp. 324, 326 (E.D.Pa. 1966), the jurisdiction of a federal district court "must always be properly demonstrated" under the body of federal statutes implementing the judiciary provisions of the Constitution.

As a result of a perceived potential for abuse inherent in an antitrust action for treble damages, many courts attempted to tighten the standard federal notice pleading requirements in such cases by forcing the pleader to allege facts in greater detail than ordinarily would be required by the Federal Rules of Civil Procedure. *E.g., Hohensee v. Akron Beacon Journal Publishing Co.*, 174 F.Supp. 450 (N.D.Ohio 1959), *aff'd*, 277 F.2d 359 (6th Cir. 1960), *cert. denied*, 364 U.S. 914, 81 S.Ct. 277, 5 L.Ed.2d 227 (1960); *Bader v. Zurich General Accident & Liability Insurance Co.*, 12 F.R.D. 437 (S.D.N.Y. 1952).[12]

The suggestion that simplified pleading requirements were inappropriate in the context of complex antitrust litigation has been flatly rejected by all modern courts considering the issue. *See* 2A J. Moore, *Moore's Federal Practice* ¶ 8.17[3], at 8–165 n.24 (1981). *Accord, Knuth v. Erie-Crawford Dairy Co-operative Ass'n*, 395 F.2d 420 (3d Cir.), *cert. denied*, 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1968); *Nagler v. Admiral Corporation*, 248 F.2d 319 (2d Cir. 1957). It is still necessary, however, that the antitrust complaint contain factual allegations that, if proved, would sustain a finding on each essential jurisdictional element.[13] In *Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2d Cir. 1965), the court stated:

> While *Nagler v. Admiral Corp.* . . . repudiated the idea that "some special pleading . . . is required in antitrust cases," it is no authority that in such cases the pleader is specially privileged to plead nothing but the statutory words. A mere allegation that defendants violated the antitrust laws as to a particular plaintiff and commodity no more complies with Rule 8 than an allegation which says only that a defendant made an undescribed contract with the plaintiff and breached it, or that a defendant owns a car and injured plaintiff by driving it negligently.

*Id.* at 299–300.

Although summary disposition of complex antitrust claims is discouraged,[14] *see,*

---

12. This approach is similar to the pleading rules that are currently applicable in civil rights actions. *See* part IV B *infra*. The specialized pleading rules have been abandoned in the antitrust context, however, despite their continuing validity in the civil rights context.

13. In determining whether plaintiffs' complaint contains sufficient factual allegations, the federal rules require that the entire complaint be considered. *Jones v. Freeman*, 400 F.2d 383 (8th Cir. 1968).

14. The Supreme Court in *McLain* impliedly created a two-step jurisdictional inquiry with a different burden of proof applicable at the pretrial stage than at the trial stage. The justification proffered for such an approach is that,

e.g., *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 602 (9th Cir. 1976), in certain cases such a procedure is fully justified. As the trial judge in *Searer v. West Michigan Telecasters, Inc.,* 381 F.Supp. 634 (W.D.Mich.1974), *aff'd mem.* 524 F.2d 1406 (1975), held:

> It is true that summary procedure should be used sparingly in complex antitrust litigation.... However, this policy of restraint is no warrant for every plaintiff who can draft an antitrust complaint, no matter how groundless or improbable its allegations, to force his claim to trial despite its deficient factual underpinning.

*Id.* at 643.

Thus, the standard federal pleading requirements outlined in part II of this opinion apply with full force to complaints in complex antitrust matters. It is under these standards, more fully explained in this section, that I must judge the substan-tive merit of defendants' motion for judgment on the pleadings.[15]

### C. Plaintiffs' Interstate Commerce Allegations

It is against this legal background that I must determine whether defendants are entitled to judgment on the pleadings or whether plaintiffs' complaint includes sufficient factual allegations to support jurisdiction under the Sherman Act.

 Because neither party has attempted to introduce materials outside the pleadings, my decision must be based strictly on a reading of plaintiffs' complaint, in a light most favorable to plaintiffs, together with any facts of which I am entitled to take judicial notice. *See* part II A *supra*; note 3 *supra.*

Seven paragraphs in plaintiffs' complaint contain allegations relating to the interstate commerce issue.[16] These allegations,

because the element of interstate commerce is both a jurisdictional and substantive issue in Sherman Act cases, it would be unfair to deprive the litigant of a decision on the merits of his interstate allegations unless it is clear as a matter of law that no provable set of facts can support plaintiffs' cause of action. Thus, "the level of proof required for a pre-discovery jurisdictional finding is a low one indeed, and ... premature dismissal of a Sherman Act case for lack of subject matter jurisdiction is disfavored." *Zenith Radio Corp. v. Matsushita Electrical Industrial Co.,* 494 F.Supp. 1161, 1177 (E.D.Pa.1980). *Accord, Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884 (3d Cir. 1977); *De Gregorio v. Segal,* 443 F.Supp. 1257, 1266–68 (E.D.Pa. 1978).

15. It should be noted that, in addressing the interstate commerce nexus of antitrust claims, most courts, including those in *McLain, Gulf Oil Corp.,* and *Crane,* have treated that nexus as a jurisdictional issue. *See also De Voto v. Pacific Fidelity Life Insurance Co.,* 516 F.2d 1 (9th Cir.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 126 (1975); *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.,* 469 F.2d 416 (5th Cir. 1972). In some instances, however, federal courts have stated that the question in such matters is not jurisdictional, but rather whether plaintiff has alleged the requisite elements of a cause of action. *E.g., Mims v. Kemp,* 516 F.2d 21 (4th Cir. 1975) (treating the problem of failure properly to allege an effect on interstate commerce as one of

failure to state a claim upon which relief can be granted). The Third Circuit uniformly approaches the interstate commerce issue as one of jurisdiction. *See, e.g., Doctors, Inc. v. Blue Cross of Greater Philadelphia,* 490 F.2d 48 (3d Cir. 1973); *Daley v. St. Agnes Hospital,* 490 F.Supp. 1309 (E.D.Pa.1980).

16. 2. Defendants are all health care providers, or agents thereof, which operate in interstate commerce within the meaning of 15 U.S.C. §§ 1 and 2; Plaintiffs are in the business of providing cardiology services to patients in interstate commerce.

> . . . .

> 9. Defendant [CCMC] ... is a health care facility established to provide a variety of medical services to patients from a widely dispersed geographical area including, but not limited to, Pennsylvania, New Jersey, Delaware, Maryland and New York.

> . . . .

> 39. Beginning sometime before January 1, 1978, and continuing thereafter to the present, the defendants engaged in an unlawful conspiracy in restraint of the aforesaid interstate commerce and medical practice in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

> 40. The aforesaid conspiracy consisted of a continuing agreement, understanding in concert of action among the Defendants to embark upon a plan and scheme to monopolize the trade and practice of the aforestated

when read in a light most favorable to plaintiffs, are of three types. First, paragraph two of the complaint alleges that defendants operate in interstate commerce and that plaintiffs provide health care to patients who travel in interstate commerce. Paragraph nine expands on the paragraph two allegation that CCMC operates in interstate commerce by listing the states from which the hospital's patients arrive. Second, paragraphs thirty-nine and forty-four contain bare legal conclusions, without any factual allegations, to the effect that defendants engaged in an unlawful conspiracy in restraint of interstate commerce and that various nonspecified acts of defendants constituted unreasonable restraints on interstate commerce crippling the business of plaintiffs. Finally, paragraphs forty and forty-two contain broad, conclusory allegations on the effects of defendants' activities on plaintiffs' business.

### D. Sufficiency of Plaintiffs' Interstate Commerce Allegations

■ My review of plaintiffs' factual allegations under the applicable legal stan-

dards leads me to the conclusion that plaintiffs have failed to satisfy even their minimal burden and that defendants therefore are entitled to judgment on the pleadings.[17]

I note first that, generally, plaintiffs' interstate commerce allegations are so vague, broad, and conclusory that plaintiffs' complaint is probably dismissable on that ground alone under the standards discussed above. *See Searer,* 381 F.Supp. at 643. I decline to rest my holding solely on this technical pleading ground, however. My holding that plaintiffs' factual allegations on the interstate commerce issue are insufficient, as a matter of law, to vest this court with jurisdiction is based on a subset of three independent findings.

### 1. Presence of Interstate Commerce

■ Plaintiffs have failed to allege or identify in their complaint any relevant aspect of interstate commerce legally cognizable under the antitrust laws. Only three specific factual references to interstate commerce appear in plaintiffs' complaint: (1) defendants are health care providers who operate in interstate commerce, Plain-

cardiac procedures and services, which conspiracy operated to restrain competition in general and to exclude plaintiffs in particular from participation in the delivery of cardiac services at Defendant [CCMC].

. . . .

42. In formulating and effectuating the aforesaid conspiracy, the Defendants conspired to perform and did perform, in the furtherance of their own unlawful scheme, plan and conspiracy to eliminate Plaintiffs as competitors the following unlawful acts:

(a) The Defendants attempted to destroy and dilute the good will and business of the Plaintiffs by prohibiting the individual Plaintiffs from performing services and procedures for which the said individual Plaintiffs are eminently qualified . . . .

(b) The Defendants have further attempted to destroy the business of Plaintiffs by permitting Defendant Cardiology Associates to monopolize all of the aforestated cardiac services and procedures at [CCMC], with the end result of depriving the Plaintiffs from participating in any of the revenues generated from said procedures;

(c) The Defendants have intentionally undermined Plaintiffs' reputation and the confidence of their patients and of the general public and the professional abilities of the individual Plaintiffs by forcing Plaintiffs to

refer their patients who require the aforestated cardiac services and procedures to Defendant Cardiology Associates or to other hospitals.

. . . .

44. Said acts of defendants constituted unreasonable restraints upon interstate commerce and have crippled the business of Plaintiffs by depriving them of the opportunity effectively and completely to practice cardiology; by depriving them of an opportunity to participate in significant revenues generated by the specialized cardiac procedures from which the individual Plaintiffs are excluded; and by undermining the confidence of patients and Plaintiffs by the implicit suggestion to the public that Plaintiffs are not qualified to perform those cardiac services and procedures for which they are, in fact, highly qualified.

Plaintiffs' Complaint ¶¶ 2, 9, 39, 40, 42, 44.

17. This section deals only with the sufficiency of plaintiffs' factual allegations. Discussion of the appropriate form of my order—that is, whether dismissal should be with, or without, prejudice, and if without prejudice, whether plaintiffs should be permitted to conduct discovery—is deferred until part III E *infra.*

tiffs' Complaint ¶ 2; (2) plaintiffs provide cardiology services to patients in interstate commerce, id., and (3) CCMC is a health care facility that provides services to patients from several states, id. at ¶ 9.[18] Under the standards described fully in part III A of this opinion, defendants' treatment of patients in interstate commerce, alleged in paragraphs two and nine of the complaint, is entirely irrelevant for purposes of this motion. Thus, plaintiffs' remaining interstate commerce theory appears to be premised on the allegations that plaintiffs provide service to patients who travel in interstate commerce.

■ The suggestion that the interstate commerce jurisdictional requirement can be satisfied through the treatment of patients who travel in interstate commerce has been uniformly rejected by all courts considering the issue. In Capili v. Shott, 487 F.Supp. 710 (S.D.W.Va.1978), aff'd, 620 F.2d 438 (4th Cir. 1980), plaintiff brought an action alleging antitrust and civil rights violations in connection with the denial to him of the privilege to practice anesthesiology at the defendant hospital. Dr. Capili's application for anesthesiology privileges had been denied allegedly because the hospital had entered into an exclusive contract with a group of anesthesiologists for the use of its anesthesiology department.

The district court, in an unpublished opinion, granted defendants' motion to dismiss plaintiffs' antitrust claims, ruling that the complaint was jurisdictionally deficient in

that it did not "support the proposition that the [defendants'] conduct substantially affected interstate commerce." Capili, No. 78–1009–BL (S.D.W.Va. March 15, 1978), slip op. at 3. The court noted that plaintiffs' interstate commerce allegations focused on the treatment of patients in both West Virginia and Virginia. The court ruled, however, that these allegations, which were more specific and extensive than plaintiffs' claims in this case, were inadequate as a matter of law because "the treatment of patients who must 'travel in interstate commerce' does not constitute the practice of medicine in 'interstate commerce as the transportation of such patients is incidental.'" Id.

■ Thus, allegations relating to the treatment of patients who travelled in interstate commerce do not satisfy the interstate commerce requirement of the antitrust laws. See also Riggall, 249 F.2d at 268; Nara v. American Dental Ass'n, 526 F.Supp. 452 (W.D.Mich.1981); Hahn v. Oregon Physicians' Service, 508 F.Supp. 970, 974 (D.Or.1981); Nankin Hospital v. Michigan Hospital Service, 361 F.Supp. 1199 (E.D.Mich.1973). In the instant case, in which plaintiffs have identified no relevant aspect of interstate commerce other than the travel of their own patients between states, the jurisdictional prerequisite that a relevant channel of interstate commerce be identified has not been met. Plaintiffs' complaint is therefore subject to dismissal on this ground.[19]

18. The only other reference to interstate commerce in plaintiffs' complaint is the conclusory allegation that defendants have engaged in a restraint of interstate commerce. See Plaintiffs' Complaint ¶ 39. This vague reference to interstate commerce is wholly inadequate to vest this court with jurisdiction. See Grigg v. Blue Cross and Blue Shield of Michigan, 1980–2 Trade Cases ¶ 63, 500 (E.D.Mich.1980) (allegation that the "activities [of the defendants] herein alleged affect interstate trade and commerce" held inadequate to provide the jurisdictional basis for an antitrust claim).

19. Reading plaintiffs' factual allegation that they treat patients in interstate commerce extremely liberally, it could be argued that the relevant channel of interstate commerce to which plaintiffs intend me to refer would be the

interstate commerce involving out-of-state payments of patient bills by insurance companies and the federal government. For example, in Moles v. Morton F. Plant Hospital, Inc., 1980–81 Trade Cases ¶ 63,600 (M.D.Fla.1980), plaintiffs' interstate commerce allegations were described as follows:

Many patients' bills are paid by insurance companies or by the federal government. Funds for the payment of these bills necessarily travel in interstate commerce. Plaintiffs allege that the amount of funds received by them from the federal government and interstate insurance carriers is dependent upon plaintiffs' access to hospital facilities.

Id. at 77,189.

I hold that, even if plaintiffs point to the payment of out-of-state patients' medical bills

*2. Substantial and Adverse Effect on Interstate Commerce*

Plaintiffs have not met their burden to allege a substantial and adverse effect on interstate commerce. I note initially in this regard that plaintiffs' allegations of effects on interstate commerce are both vague and conclusory. Further, plaintiffs have pointed to only one single area of interstate activity—the flow of patients from out of state—that could possibly be affected by defendants' activities. Plaintiffs have cited, and I have located, no case in which a federal court has sustained its jurisdiction on the basis of such paltry and insubstantial interstate commerce allegations.

For example, in *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), a case relied on heavily by plaintiffs, the alleged effects on interstate commerce were substantially greater than those in the instant complaint. Plaintiffs' complaint in *Hospital Building Co.* identified four relevant aspects of interstate commerce affected by defendants' activities:. (1) plaintiff purchased medicine and supplies from out-of-state; (2) plaintiff derived revenues from out-of-state insurance companies; (3) plaintiff paid management fees to its out-of-state parent corporation, and (4) financing for plaintiff's planned expansion would come from out-of-state lenders. The Supreme Court found that plaintiffs' complaint contained sufficient factual allegations to support a retention of federal jurisdiction. "This *combination of factors* is certainly sufficient to establish a 'substantial effect' on interstate commerce under the Act." *Hospital Building Co.*, 425 U.S. at 744, 98 S.Ct. at 1852 (emphasis supplied). Even assuming that the flow of out-of-state patients could be considered interstate com-

merce, an assumption that I am not willing to make, *see* part III D 1 *supra,* such activity alone is clearly not the "combination of factors" considered sufficient to meet the interstate commerce requirement in *Hospital Building Co.*

Plaintiffs' allegations are strikingly similar to the allegations made by the plaintiff in the Tenth Circuit case of *Wolf v. Jane Phillips Episcopal-Memorial Medical Center*, 513 F.2d 684 (10th Cir. 1975).[20] In *Wolf,* the plaintiff physician sought to base Sherman Act jurisdiction on allegations that his own business involved the purchase of interstate goods and that the business of the defendant hospital had a similar interstate nature. The court of appeals affirmed the trial judge's dismissal of the antitrust claims on the ground, *inter alia,* that the plaintiffs' jurisdictional allegations were insufficient, and stated:

> [A]side from a general allegation that his business involves interstate commerce, the plaintiff does not suggest that the defendants' conspiracy threatens his purchase of interstate goods or that the flow of such goods would be affected in any way by exclusion from the defendants' medical staff.... The facts alleged by the plaintiff cannot support the proposition that his exclusion from the medical staff has affected, or threatens to affect, the defendants, their hospitals, or through them interstate commerce.

*Wolf,* 513 F.2d at 688.

The United States District Court for the Eastern District of Michigan was faced with a similar complaint in *Grigg v. Blue Cross and Blue Shield of Michigan*, 1980–2 Trade Cases ¶ 63,500 (E.D.Mich.1980). *Grigg* involved a private antitrust action alleging that the operation of a health care

as the relevant channel of interstate commerce in this case, defendants would still be entitled to judgment on the pleadings as a matter of law. Both courts considering this issue have held that such allegations are insufficient to sustain the jurisdiction of a federal trial court. *See Hahn v. Oregon Physicians' Service*, 508 F.Supp. 970 (D.Or.1981); *Moles v. Morton F. Plant Hospital, Inc.*, 1980–81 Trade Cases ¶ 63,600 (M.D.Fla.1980).

**20.** Although plaintiffs argue that the Tenth Circuit's holding in *Wolf* is no longer valid in light of the *McLain* decision, I am of a different view. In *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715 (10th Cir. 1980) (*en banc*), the court specifically stated that its conclusion in *Wolf* "squares with both *McLain* and *Hospital Building*." *Id.* at 726.

program violated the Sherman Act. Defendants moved to dismiss the antitrust counts arguing that plaintiffs had alleged the interstate commerce aspect of their claims only through a sweeping statement that the defendants' challenged activities "affect interstate trade and commerce." *Grigg*, 1980–2 Trade Cases at 76,666. These allegations are remarkably similar to the allegations contained in paragraphs thirty-nine, forty, and forty-four of plaintiffs' complaint in the instant case.

In considering the motion to dismiss, the district court invoked the line of jurisdictional cases cited above. *See* part III A *supra*. Finding that the plaintiffs had offered only a "conclusory allegation" in this regard, the court was compelled to dismiss the antitrust counts for lack of jurisdiction because the "[p]laintiffs have failed to plead any *specific factual allegations that the challenged activities have a substantial adverse effect on interstate commerce.*" *Id.* (emphasis supplied).

Finally, in *Barr v. National Right to Life Committee, Inc.*, No. 79–420–ORL–CIV–Y (M.D.Fla. July 27, 1981), the court was faced with the following interstate commerce allegations: plaintiff treats patients who travel in interstate commerce; plaintiff receives payment from government agencies or insurance companies located outside the State of Florida; plaintiff uses or prescribes drugs, medical supplies, equipment, products, and materials purchased outside the State; and plaintiff travels in interstate commerce as part of his business. Following the *Hospital Building Co.* test, the court concluded that, "[t]aken in the aggregate, the impact upon interstate commerce of the denial of staff privileges to Dr. Barr cannot be more than minimal and accordingly is insufficient to confer Sherman Act coverage." *Barr*, slip op. at 9.

In sum, plaintiffs' allegations in the instant case fail to allege with specificity any substantial effect on interstate commerce. A comparison of plaintiffs' allegations in this regard to the allegations of other plaintiffs in similar contexts demonstrates conclusively the inadequacies of plaintiffs' complaint.

### 3. Nexus Between Defendants' Challenged Activities and Interstate Commerce

Finally, and most significantly, plaintiffs' complaint is deficient because it does not allege any specific nexus between defendants' activities and some aspect of interstate commerce. It is this "required 'critical relationship'" which must be alleged, for the court cannot "presume the nexus between the challenged activity and interstate commerce." *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 724 (10th Cir. 1980) (*en banc*). Plaintiffs have alleged, at best, merely that both they and defendants provide services to out-of-state patients. They have specified no connection, however, between these patients and the action of defendants in not allowing plaintiffs to perform the specified cardiology procedures at CCMC. Thus, plaintiffs have not demonstrated any "logical connection" between the challenged activity of defendants and interstate commerce, *Crane*, 637 F.2d at 723, and therefore have not alleged the requisite nexus to establish jurisdiction under the antitrust laws.

Language from *Hospital Building Co.* paraphrased by plaintiffs in their brief, *see Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Judgment on the Pleadings* 9, illustrates conclusively this deficiency in plaintiffs' complaint. In *Hospital Building Co.*, the Court stated the following:

> The complaint, fairly read, alleges that if respondents and their coconspirators were to succeed in blocking petitioner's planned expansion, petitioner's purchases of out-of-state medicines and supplies as well as revenues from out-of-state insurance companies *would be* thousands and perhaps hundreds of thousand dollars less than they would otherwise be. Similarly, the management fees the petitioner pays to its out-of-state parent corporation *would be* less if the expansion were blocked. Moreover, the multimillion-dollar financing for the expansion, a large portion of which would be from out of

State, *would simply not take place* if the respondents succeeded in their alleged scheme.

*Hospital Building Co.*, 425 U.S. at 744, 98 S.Ct. at 1852 (emphasis supplied). In stark contrast, plaintiffs in the instant case have not identified one single specific effect that defendants' actions have had in the past, or will have in the future, on plaintiffs' operations in interstate commerce.

Judge Becker's recent decision in *Daley v. St. Agnes Hospital, Inc.*, 490 F.Supp. 1309 (E.D.Pa.1980), is also instructive in this regard. In *Daley*, a former hospital nursing director brought suit under the Sherman Act and the Civil Rights Act alleging that he was discharged and blacklisted because of his vigorous advocacy of the rights, privileges, and professional status of his nursing staff. In granting defendants' motion for summary judgment on the antitrust claim, the court rejected plaintiff's argument that an effect on interstate commerce could be established merely by showing that the defendant hospital was "in commerce" through statements alleging the general involvement of out-of-state patients, interstate transportation, interstate media, or interstate purchase of supplies at the hospital: "it is plain that, to meet the necessary jurisdictional requisite, the alleged violation *must have some nexus with interstate commerce.*" *Daley*, 490 F.Supp. at 1317 (emphasis supplied).

#### 4. Conclusion

In sum, I hold that plaintiffs' complaint fails to meet even the most minimal standards for properly pleading a cause of action under the antitrust laws. A substantial number of plaintiffs' factual interstate commerce allegations are broad, vague, and conclusory. The remainder fail even to approach the level of specificity required for a district court to sustain its own jurisdiction. As noted by the Tenth Circuit in *Crane*, "interstate commerce is not implicated for Sherman Act purposes, every time someone

is excluded from a staff, organization, association, or other membership." 637 F.2d at 726. *Accord, Harron v. United Hospital Center, Inc.*, 522 F.2d 1133 (4th Cir. 1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321 (1976); *Riggall v. Washington County Medical Society*, 249 F.2d 266 (8th Cir. 1957), *cert. denied*, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530 (1958); *Nankin Hospital v. Michigan Hospital Service*, 361 F.Supp. 1199 (E.D.Mich.1973). Plaintiffs' complaint fails to allege any legally relevant channel of interstate commerce, any substantial effect on interstate commerce, and any connection between the challenged actions of defendants and interstate commerce. As a result, defendants' motion for judgment on the pleadings must be granted.

#### E. Appropriate Relief

Having determined that defendants are entitled to judgment on the pleadings on Count I of plaintiffs' complaint, the only issue remaining is whether plaintiffs' complaint should be dismissed with, or without, prejudice, and if without prejudice, whether plaintiffs should be granted leave to continue discovery. For the reasons noted below, I hold that Count I of plaintiffs' complaint should be dismissed without prejudice. Plaintiffs will be granted leave to amend their complaint, but all discovery in the instant litigation will be stayed pending the filing by plaintiffs of a complaint vesting jurisdiction in this court.[21]

Plaintiffs' complaint fits within the category of complaints that fail to meet even the minimal notice pleading requirements of the federal rules. *See* part II B *supra*. Yet, under the applicable precedents, particularly in the Third Circuit, no matter how inadequate the pleading, summary dismissal of complex antitrust actions without granting leave to amend is a highly disfavored practice. *See* part III B *supra*.

---

**21.** Because I dismiss both Counts I and II of plaintiffs' complaint by this opinion, it is probably unnecessary for me formally to stay discovery. Nevertheless, I want to make clear my

intent that defendants not be subjected to any further costs until plaintiffs have met their burden of pleading a minimally sufficient cause of action.

As a result, I have decided not to dismiss Count I with prejudice. Although I have my doubts whether these plaintiffs will ever be able to draft a complaint vesting this court with jurisdiction, this case does not fit within any of the exceptions to the standard rule that leave to amend should be granted almost as a matter of course. See part II supra. This is not a case in which the merits of the controversy can be thoroughly and fully decided without amendment, as it is conceivable that plaintiffs could amend their complaint to state jurisdiction properly.[22] Further, the record does not disclose any valid reason—such as delay, bad faith, or dilatory motives—for refusing to permit plaintiffs to amend their complaint.

My holding that plaintiffs' Count I allegations should not be dismissed with prejudice has given full effect to the notice pleading policy discussed in part II of this opinion. Similarly, my holding that all discovery should be stayed in this litigation until plaintiffs file a jurisdictionally appropriate complaint gives effect to the efficiency policy also outlined above. The case law is clear that, in a case in which discovery is both necessary and demonstrably useful, a plaintiff's cause of action should not be dismissed before he has an opportunity to conduct discovery. But, in a case in which discovery would serve no demonstrably useful purpose, granting plaintiffs extensive discovery is an abuse of discretion by the trial judge.

In this case, granting plaintiffs discovery at this point in the proceedings would be of no use to them under the applicable substantive jurisdictional standards. In order to state a jurisdictionally proper cause of action under the Sherman Act, plaintiffs must identify *their* contacts with interstate commerce, not CCMC's or any of the other defendants'. They then must identify the effects on that channel of interstate commerce. Finally, they must allege a nexus between defendants' denial of hospital staff privileges and the effects on interstate commerce. None of that information is in the control of defendants. Thus, I hold that, in any denial of hospital staff privileges case, including the instant case, discovery by plaintiffs on the jurisdictional issue is unnecessary as no information gathered in that process is relevant to the court's jurisdictional inquiry. Thus, until plaintiffs draft a minimally adequate complaint vesting this court with jurisdiction, they are not entitled to engage in costly discovery inquiries.

### IV. Plaintiffs' Civil Rights Claims

Plaintiffs' Count II allegation that defendants' conduct violated plaintiffs' civil rights raises simpler issues than those just discussed with respect to plaintiffs' antitrust claims. Essentially, plaintiffs allege that the denial of the opportunity to perform the cardiology procedures specified in the complaint constitutes a deprivation of plaintiffs' equal protection and substantive due process rights guaranteed by the fourteenth amendment. Further, plaintiffs allege that the lack of any hearing in connection with CCMC's failure to allow them to perform these procedures resulted in the denial of procedural due process under the fourteenth amendment. Defendants argue, however, that plaintiffs have failed to allege specifically a required element of their cause of action—that defendants acted under color of state law—and that the complaint should therefore be dismissed.

---

**22.** Unlike the state action issue, discussed below, in which courts have never found a private hospital acting under color of state law when denying staff privileges to individual physicians, many courts do permit Sherman Act complaints to move forward under the lesser burden of proof at the pre-trial stage. See, e.g., Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884 (3d Cir. 1977); Stone v. William Beaumont Hospital, No. 79–74212 (E.D.Mich. Aug. 17, 1981); Zenith Radio Corp. v. Matsushita Electrical Industrial Co., 494 F.Supp. 1161, 1171–77 (E.D.Pa.1980); Robinson v. Magovern, 456 F.Supp. 1000 (W.D.Pa. 1978) (dismissing plaintiffs' civil rights claims at pre-trial stage, but permitting antitrust claims to go to trial). Thus, the legal insufficiency of plaintiffs' interstate commerce allegations is simply not as clear as the legal insufficiency of plaintiffs' state action allegations. As a result, I am reluctant to dismiss Count I with prejudice.

## A. Section 1983

It is axiomatic that, in order to state a cause of action under section 1983,[23] "the plaintiff must prove that the official [1] acted under color of state law and [2] caused an injury to his constitutional or federal rights." M. Avery & D. Rudovsky, *Police Misconduct: Law and Litigation* § 2.2, at 2–3 (2d ed. 1981).

### 1. Deprivation of a Federally Protected Interest

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Arnett v. Kennedy*, 416 U.S. 134, 151, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974), *quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, in order to state a cause of action under section 1983, the exclusion of plaintiffs from the performance of certain specified cardiology procedures must be found to be a deprivation of a federally protected interest within the meaning of section 1983.

The clarity with which this issue is presented to the court leaves a great deal to be desired. Apparently, defendants would not be averse to my deciding this issue: "For purposes of this motion, the moving defendants *do not* concede that CCMC's action in excluding the Plaintiffs from the performance of certain procedures did, in fact, violate any rights of the plaintiffs which are protected by the Constitution or § 1983." *Memorandum of Points and Authorities in Support of Defendants' Motion for Judgment on the Pleadings* 17 n.6 (emphasis supplied). Yet, defendants did not fully brief this issue, and plaintiffs' responsive memorandum does not even mention it. As a result, I have concluded that it would be inappropriate for me to decide this issue at this time.[24]

**23.** Section 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**24.** Although it is true that plaintiffs' brief did not address this issue at all, defendants' brief does cite what appears to be persuasive authority for the proposition that plaintiffs have not been deprived of any constitutionally cognizable interest. In *Adler v. Montefiore Hospital Ass'n of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974), the Supreme Court of Pennsylvania upheld a defendant hospital's policy of restricting the use of certain cardiology facilities, including the hospital's cardiac catheterization laboratory, to only the full-time laboratory director and excluding other staff physicians from the use of these facilities. The court ruled that this policy did not violate any substantive due process rights of the plaintiff-physician or the equal protection clause of the Constitution. Further, the court ruled that plaintiff was not entitled to a hearing under the Constitution before the denial by the hospital of his request to perform the procedures.

Although not cited for this proposition by defendants, the Eastern District of Pennsylvania decision in *Sament v. Hahnemann Medical College & Hospital of Philadelphia*, 413 F.Supp. 434 (E.D.Pa.1976), *aff'd mem.* 547 F.2d 1164 (3d Cir. 1977), reached a similar conclusion. In *Sament*, the defendant hospital had completely terminated the plaintiff physician's staff privileges without any hearing. In a well-reasoned opinion, Judge Ditter held that the plaintiff physician "had no more than a mere subjective expectancy of continued employment by Hahnemann," *id.* at 442, and that therefore plaintiff's position at the hospital was neither a protected property nor liberty interest under the fourteenth amendment. *Id.* at 442–43. *See also Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Capili v. Shott*, 487 F.Supp. 710 (S.D.W.Va.1978), *aff'd*, 620 F.2d 438 (4th Cir. 1980).

Plaintiffs, of course, cited no authority in opposition to these precedents, nor was I able to find any precedent helpful to plaintiffs in this regard. Despite my present inclination to follow this well-reasoned and, apparently, uncontroverted line of authority, I am reluctant to hold that plaintiffs have failed to allege the deprivation of a federally protected property right without giving them the opportunity to brief this issue in some detail. Further, in light of my holding that plaintiffs have failed to aver facts sufficient to support their claim that de-

## 2. Color of State Law

■ In considering plaintiffs' constitutional and section 1983 claims, I must determine whether plaintiffs have shown that the challenged activity constitutes action taken under color of state law or "state action." It is uncontroverted that the fourteenth amendment due process clause inhibits only such action as may be said to be that of the state. *The Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). "While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action' on the other, frequently admits of no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1974).

■ Notwithstanding this difficulty, the Third Circuit has categorized the decisions in which courts have "pierced the seemingly impenetrable veil of private, individual conduct to find state action" into three broad groupings: (1) where state courts enforced an agreement affecting private parties;[25] (2) where the state "significantly" involved itself with the private party,[26] and (3) where there was private performance of a government function.[27] *Magill v. Avonworth Baseball Conference*, 516 F.2d 1328, 1331 (3d Cir. 1975).

Virtually all cases involving challenges by physicians who have been denied total or partial hospital staff privileges are argued to fit within the second category above. This case is no exception to that rule.[28] Thus, plaintiffs argue that the state is so significantly involved with the operations of CCMC that the defendants' actions being challenged in this case must be deemed to be under color of state law for the purposes of section 1983.

Although this opinion later analyzes a number of court decisions dealing specifically with the state action issue as it applies to hospitals, I turn first to a review of the three leading decisions of the Supreme Court in the second category of state action cases described above. In the first of these cases, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Court held that a privately owned discriminatory restaurant located in a public parking facility was acting under color of state law for the purposes of the fourteenth amendment. The Court noted that otherwise private conduct may be viewed as state action in a case in which the state and defendant have entered into a

fendants acted under color of state law in denying plaintiffs the right to practice the specified cardiology procedures, it is unnecessary for me to decide this issue in the context of this case.

**25.** The best example of a case in this category is the Supreme Court's decision in *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), in which the Supreme Court held that judicial enforcement of private, racially restrictive covenants against black purchasers of land constituted state action repugnant to the fourteenth amendment.

**26.** Three major Supreme Court cases are the most frequently cited decisions within this second category of state action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). These three cases are discussed fully in the text following this paragraph.

**27.** The most frequently cited case in this third category is the Supreme Court's decision in *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), in which a private political party's candidate selection process excluding blacks from participation was struck down. Underlying the Court's holding was the fact that the party's primary was the only effective part of the electoral process determining who would rule and govern the specific county. *Accord, Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Nixon v. Condon*, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932).

**28.** Some plaintiffs have argued that a hospital assumes a quasi-public character and therefore attempt to convince courts to find the requisite degree of state action in reliance on the Third Circuit's third category above. Although plaintiffs in this case do not appear to make any such argument, I consider and reject the propriety of this theory on the facts of this case later in this opinion.

"symbiotic relationship" in which the state has "so far insinuated itself into a position of interdependence with [the defendant] that it must be recognized as a joint participant in the challenged activity." *Id.* at 725, 81 S.Ct. at 862.

In the second of the Supreme Court's classic cases involving the significant state involvement category, the *Burton* holding was reaffirmed even though no state action was found to be present on the facts of that case. In *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Court held that the licensing and extensive regulation of defendant by the State Liquor Control Board could not be said to foster or to encourage racial discrimination in any way. The Court distinguished its earlier holding in *Burton* by stating that the facts in *Moose Lodge* revealed "nothing approaching the symbiotic relationship between lessor and lessee that was present in *Burton.*" *Id.* at 175, 92 S.Ct. at 1972.

Finally, in what many courts consider an alternative to the *Burton* "symbiotic relationship" formulation, the Supreme Court held in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), that state action may be found only where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453.

■ In sum, my analysis of the Supreme Court decisions in *Burton, Moose Lodge,* and *Jackson* enables me to conclude that, in order to satisfy the significant state involvement prong of state action analysis, plaintiffs must aver sufficient factual allegations to establish either a close nexus between the challenged activity and the state or the existence of a symbiotic relationship between defendants and the state.

### B. Standards for Reviewing State Action Allegations

Before analyzing the sufficiency of plaintiffs' state action allegations in the instant case, I briefly review the specific standards used by federal courts making such an inquiry. These standards merely supplement the standards discussed in part II of this opinion.

■ The general rule in civil rights actions is that plaintiffs must allege those facts that support their claim of state action with some degree of particularity. As the Tenth Circuit stated in *Brown v. Chaffee,* 612 F.2d 497 (10th Cir. 1979), "[a]lthough pleadings are to be construed liberally, the complaint must state adequate facts to support [the state action] element of the cause of action." *Id.* at 501. *Accord, Dewell v. Lawson,* 489 F.2d 877, 879–80 (10th Cir. 1974).[29]

Plaintiffs, however, must do more than meet this rather general "notice pleading" type requirement in order to state a cause of action under section 1983 in the Third Circuit. In this circuit, civil rights plaintiffs are required to plead facts with specificity; broad and conclusory allegations as to the existence of state action, as well as to other elements of a prima facie civil rights case, are insufficient as a matter of law. *E.g., Rotolo v. Borough of Charlerloi,* 532 F.2d 920 (3d Cir. 1976) ("In this circuit, plaintiffs in civil rights cases are required to plead facts with specificity."); *Esser v. Weller,* 467 F.2d 949 (3d Cir. 1972) ("a complaint must specifically state facts in sup-

---

**29.** The plaintiff in *Brown* argued to the court of appeals that the district court had erred in granting defendants' motion for summary judgment on the state action issue before any discovery had been completed. Plaintiffs in this case also argue that granting defendants' motion for judgment on the pleadings with respect to the state action claim would be error because plaintiffs have not yet been afforded the opportunity for discovery. The Tenth Circuit rejected plaintiff's argument that any such *per se* rule existed: "There is no such requirement in Rule 56." *Brown,* 612 F.2d at 504. Thus, consistent with the synthesis of the applicable rule 12(c) precedents in part II of this opinion, the court of appeals held that in a case in which plaintiff's complaint is *legally* deficient, as opposed to *factually* deficient, summary disposition before plaintiff has the opportunity to conduct discovery may be appropriate.

port of its conclusions"); *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970) ("complaints in civil rights cases must be specifically pleaded in order to avoid a motion to dismiss"); *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967) (complaint in a civil rights action is insufficient because it was "broad and conclusory").[30]

The rationale underlying the *Negrich* requirement that facts be specifically pleaded in civil rights cases is to "weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims." *Kauffman*, 420 F.2d at 1276 n.15. *Accord, Valley v. Maule*, 297 F.Supp. 958, 960 (D.Conn.1968).

**30.** This rule is adhered to unanimously within the Third Circuit. *See Kauffman*, 420 F.2d at 1275 n.13; 2A J. Moore, *Moore's Federal Practice* ¶ 8.17[4.–1], at 8–176 (1981). A limited number of other courts are in agreement with this rule. *E.g., Glaros v. Perse*, 628 F.2d 679 (1st Cir. 1980); *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied*, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). A majority of the other circuits, however, reject the Third Circuit position that greater specificity in pleading is required for civil rights plaintiffs. *See* 2A J. Moore, *supra*, at ¶ 8.17[4.–1], at 8–177 to 8–176. Even in these circuits, however, "the courts will dismiss a complaint as insufficient where the allegations contained therein are vague or conclusory." *Id.* at ¶ 8.17[4.–1], at 8–176. *See generally id.* (collecting cases).

**31.** 3. The Court has jurisdiction over the subject matter of Count II of this suit under 28 U.S.C. §§ 1331 and 1343 and the Constitution of the United States. Count II is brought to redress the deprovation [*sic*] under color of state statutes [*sic*], ordinance, regulation, custom or usage of rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution and by the Civil Rights Act of 1871, 42 U.S.C. 1983 .... In connection with the foregoing, the existence of certain economic and regulatory circumstances surrounding its construction and maintenance as a health care facility, qualifies Defendant Crozer-Chester Medical Center as a "public" or "quasi-public" institution, the actions of whose agents constitute "state action" for the purpose of invoking federal jurisdiction under 42 U.S.C. 1983 and claims arising under the United States Constitution.

## C. Plaintiffs' State Action Allegations

Three paragraphs in plaintiffs' complaint contain allegations relating to the state action requirement.[31] These allegations, when read in the light most favorable to plaintiffs, are of two types: First, the complaint contains broad conclusory statements that defendants were acting under color of state law. Second, paragraph three refers to "the existence of certain economic and regulatory circumstances surrounding [CCMC's] construction and maintenance as a health care facility."

These sparse allegations are then expanded by matters outside the pleadings, most obviously plaintiffs' answers to interrogatories[32] and plaintiffs' brief in opposi-

. . . .

51. The exclusion of Plaintiffs from the practice of the aforesaid cardiac procedures and services at Crozer-Chester Medical Center constitutes discrimination under color of state law by Defendants in violation of plaintiffs' rights to equal protection of the laws and to substantive due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

52. Plaintiffs were not afforded a hearing at any time during the period of their exclusion from the performance of the aforementioned cardiac procedures and services, and accordingly, were denied procedural due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.

Plaintiffs' Complaint ¶¶ 3, 51, 52.

**32.** Plaintiffs' response to defendants' interrogatory number forty-four reads as follows:

44. The reasons upon which Plaintiffs base their allegations that CCMC is a "public" or "quasi-public" institution whose actions constitute "state action" within the meaning of 42 U.S.C. § 1983 are as follows:

(a) Receipt by CCMC of funds in large measures [*sic*] from public sources, including tax-exempt municipal funds, and through public solicitation;

(b) Receipt of tax benefits by reason of its non-profit and non-private character;

(c) Existence of a monopoly in its geographical area with regard to certain specialized services, including but not limited to its Burn Unit and its Cardiac Catheterization facilities;

(d) Receipt of substantial funding from the federal government and general participation in the benefits available under the Hill-Burton Act, 42 U.S.C. § 291 (1965).

tion to defendants' motion for judgment on the pleadings.[33] These additional allegations are that CCMC receives funds from public sources, receives tax benefits, has a monopoly in its geographical area, receives Hill-Burton funds, and receives substantial Medicare and Medicaid funding.[34]

### D. Sufficiency of Plaintiffs' State Action Allegations

■ My review of the factual allegations contained in plaintiffs' complaint under the applicable legal standards leads me to conclude that plaintiffs can prove no set of facts under their complaint to justify a finding that defendants acted under color of state law in denying plaintiffs the right to practice the specified cardiology procedures.[35] I note first that, generally, plaintiffs' state action allegations are so vague, broad, and conclusory that they would be deemed insufficient to sustain a civil rights action in any circuit in the country under the standards discussed in part IV A *supra*. My holding, however, is not based solely on this ground.[36]

My reluctance to hold that plaintiffs have failed to meet their burden to move beyond broad conclusory state action allegations is based on the liberal interpretation that I am prepared to give the words "certain

economic and regulatory circumstances surrounding [CCMC's] construction and maintenance as a health care facility" found in paragraph three of plaintiffs' complaint. Although it is difficult to conceive of a more vague or broad state action allegation, it is at least arguable that the more specific factual allegations delineated in plaintiffs' answer to defendants' interrogatory number forty-four is a potential "set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Notwithstanding this liberal interpretation of plaintiffs' complaint, I have concluded that defendants did not act under color of state law on the facts of this case. Following the Third Circuit's analysis in *Magill, see* part IV A *supra*, I note first that this is not a case in which state courts have enforced an agreement affecting private parties. The first prong of the *Magill* analysis is therefore inapplicable to the instant case.

Second, I hold that this is not a case in which there was private performance of a government function and that *Magill's* third prong is therefore also inapplicable to the facts of this case. The Supreme Court's decision in *Jackson v. Metropolitan Edison*

---

(e) Receipt of substantial Medicare and Medicaid funding under the Social Security Act.

**33.** Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings is consistent with their answer to interrogatory number forty-four. The brief appears to premise plaintiffs' state action theory on three factual elements: (1) the alleged role of government funding in constructing the Cardiac Catheterization Laboratory and the Burn Unit at CCMC; (2) the strict regulatory framework within which the two hospital units operate, and (3) the "monopolistic position" of the Cardiac Catheterization Laboratory and the Burn Unit at CCMC as a result of state regulations limiting the number of such facilities.

**34.** Because the answer to interrogatory number forty-four is not under oath as required by rule 33 of the Federal Rules of Civil Procedure, and because plaintiffs' counsel's statements in briefs and at oral argument are also unsworn and not part of the record, I do not consider these additional facts "matters outside the

pleadings . . . presented to and not excluded by the court," Fed.R.Civ.P. 12(c), *see Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973); *United States v. Beard*, 381 F.2d 329, 331 (3d Cir. 1967); rather, I treat them as a set of facts that could be proved consistent with the vague allegations of plaintiffs' complaint.

**35.** This section deals only with the sufficiency of plaintiffs' factual allegations. Discussion of the appropriate form of my order—that is, whether dismissal should be with, or without, prejudice—is deferred until part IV E *infra*.

**36.** Of course, the Third Circuit's civil rights pleading standards are even more restrictive than those applied by other circuit courts of appeals. *A fortiori*, plaintiffs' state action allegations are insufficient to satisfy the more stringent pleading requirements that must be applied in this circuit. Again, however, my holding is not based solely on this technical deficiency.

*Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), severely limited this potential ground for a finding of state action. Although the activities of CCMC are clearly "affected with a public interest," the functions performed by it have not been "traditionally associated with sovereignty," *id.* at 353, 95 S.Ct. at 454, and have long been relegated to the private domain, rather than treated as "traditionally the exclusive prerogative of the State." *Id.* Thus, CCMC's activities are not "so clearly governmental in nature" as to amount to a "public function." [37]

Finally, I hold that plaintiffs have not alleged sufficient facts to justify a finding of state action even under the *Magill* court's second prong of significant state involvement with a private party. I find that plaintiffs have failed to meet either of the two tests for a demonstration of significant state involvement—they have established neither a nexus between the state and the particular activity being challenged nor the existence of a symbiotic relationship between the state and defendants.

### 1. Nexus Requirement

All courts considering application of this nexus requirement have imposed on plaintiffs the burden of demonstrating that "the state [is] involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." *Powe v. Miles*, 407 F.2d 73, 81 (2d Cir. 1968).

Plaintiffs' complaint in this case is completely devoid of any allegations suggesting the existence of any nexus between the state or federal government and CCMC's refusal to grant plaintiffs the privilege of performing the specified cardiology procedures at the hospital.[38] The complaint contains no suggestion that Pennsylvania, by regulation or otherwise, directed, influenced, or in any way controlled CCMC's decisions regarding hospital approval of plaintiffs' applications for the specified cardiology privileges. I therefore hold that the "sufficiently close nexus" standard enunciated in *Jackson*, and applied in numerous hospital cases, *e.g., Schlein v. The Milford Hospital, Inc.*, 561 F.2d 427 (2d Cir. 1977); *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D.N.Y.), *aff'd mem.*, 506 F.2d 1395 (2d Cir. 1974); *Mulvihill v. Julia L. Butterfield Memorial Hospital*, 329 F.Supp. 1020 (S.D.N.Y.1971), has not been met in the instant case.

### 2. Symbiotic Relationship

I also hold that plaintiffs have not pleaded sufficient allegations to justify a finding of state action under the symbiotic relationship theory. This holding is based on two related lines of analysis. First, I review each fact that plaintiffs could prove in support of their state action allegations and demonstrate that, as a matter of logic and precedent, proof of any one of these facts would be insufficient to support a finding

---

**37.** This conclusion is in accordance with the decisions of every other court to consider the issue whether private hospitals act under color of state law because they perform a public function. *E.g., Schlein v. Milford Hospital, Inc.*, 561 F.2d 427 (2d Cir. 1977); *Taylor v. St. Vincent's Hospital*, 523 F.2d 75 (9th Cir. 1975), *cert. denied*, 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308 (9th Cir. 1974); *Ward v. St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973); *Robinson v. Magovern*, 456 F.Supp. 1000 (W.D.Pa.1978); *Holton v. Crozer-Chester Medical Center*, 419 F.Supp. 334 (E.D. Pa.1976), *vacated on other grounds*, 560 F.2d 575 (1977); *Sokol v. University Hospital, Inc.*, 402 F.Supp. 1029 (D.Mass.1975); *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D.N.Y.), *aff'd mem.* 506 F.2d 1395 (2d Cir. 1974).

**38.** Although the Rules and Regulations for General Special Hospitals of the Commonwealth of Pennsylvania contain general provisions relating to medical staff membership privileges, these regulations have no bearing on the determination made by CCMC with respect to individual applications for privileges. *See* 28 Pa.Admin.Code chs. 101–153 (Shepard's 1980). These regulations are irrelevant to this case as all plaintiffs have been granted medical staff privileges at CCMC. Plaintiffs have been denied only the opportunity to perform certain specified procedures at the hospital, a contingency apparently not addressed in the Commonwealth's regulations.

that defendants acted under color of state law. Second, because the state action test is a "facts and circumstances" test, I review a number of past decisions by other federal courts to illustrate by way of comparison that, even cumulatively, plaintiffs' allegations are insufficient to vest this court with jurisdiction.

### a. Specific elements

Although plaintiffs' complaint does not allege specifically any factual basis for its conclusion that defendants acted under color of state law and is therefore subject to dismissal in the Third Circuit on that ground, *see* part IV A *supra*, plaintiffs could prove a number of specific facts in support of this bare conclusion. This subsection analyzes each of the factual elements that plaintiffs could prove in support of their state action allegations. I hold that, even if plaintiffs could prove any of these factual elements, such proof would be insufficient to support a finding that defendants acted under color of state law.

### (i) Receipt of Hill-Burton funds :

Plaintiffs might be able to show that CCMC has received Hill-Burton funds over the years. As a matter of logic, such proof would be insufficient to maintain plaintiffs' state action allegations. This is so because such general governmental involvement in the operations of a hospital is so factually dissimilar from the extensive physical and financial interdependence that exists between the private party and the state in cases in which courts have made a finding that the private party was acting under color of state law. Further, simple provision of funds does nothing to establish the requisite nexus between the alleged government involvement and the denial of specialized privileges of which plaintiffs are complaining.

With the exception of the two classes of cases noted below, courts have unanimously held that receipt of Hill-Burton funds by a hospital does not convert all of its actions into actions taken under color of state law. *Madry v. Sorel*, 558 F.2d 303 (5th Cir.), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1977); *Aasum v. Good Samaritan Hospital*, 542 F.2d 792 (9th Cir. 1976); *Briscoe v. Bock*, 540 F.2d 392 (8th Cir. 1976), overruling *Stanturf v. Sipes*, 335 F.2d 224 (8th Cir. 1964), cert. denied, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965). *Taylor v. St. Vincent's Hospital*, 523 F.2d 75 (9th Cir. 1975), cert. denied, 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); *Watkins v. Mercy Medical Center*, 520 F.2d 894 (9th Cir. 1975); *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.*, 507 F.2d 1103 (9th Cir. 1974). *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308 (9th Cir. 1974); *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873 (5th Cir.), cert. denied, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1973); *Jackson v. Norton-Children's Hospitals, Inc.*, 487 F.2d 502 (6th Cir. 1973), cert. denied, 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); *Doe v. Bellin Memorial Hospital*, 479 F.2d 756 (7th Cir. 1973); *Ward v. St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973); *Manning v. Greensville Memorial Hospital*, 470 F.Supp. 662 (E.D.Va.1979); *Jones v. Eastern Main Medical Center*, 448 F.Supp. 1156 (D.Me. 1978); *Hodge v. Paoli Memorial Hospital*, 433 F.Supp. 281 (E.D.Pa.1977), aff'd, 576 F.2d 563 (3d Cir. 1978); *Holton v. Crozer-Chester Medical Center*, 419 F.Supp. 334 (E.D.Pa.1976), vacated on other grounds 560 F.2d 575 (3d Cir. 1977); [39] *Sament v. Hahnemann Medical College and Hospital*, 413

---

**39.** The Third Circuit's vacating of the district court's opinion in *Holton* occurred in what the Court of Appeals itself labelled an "unusual procedural posture." 560 F.2d at 577. During the pendency of the appeal, plaintiffs filed a motion to amend their complaint adding new allegations referring to the Social Security Act mandate that the state must provide family planning services for certain Medicaid recipients. The Third Circuit declined to consider the merits of this new allegation and remanded the entire case to the district court "for consideration of a motion by plaintiffs to amend the complaint." *Id.* at 578. Because the Court of Appeals did not consider the soundness of Judge Newcomer's analysis on the state action allegations below, and therefore did not vacate his order dismissing the defendants on that basis, the Third Circuit decision in *Holton* is a vacation on other grounds.

F.Supp. 434 (E.D.Pa.), *aff'd mem.* 547 F.2d 1164 (3d Cir. 1976); *Acosta v. Tyrone Hospital*, 410 F.Supp. 1275 (W.D.Pa.1976); *Berrios v. Memorial Hospital, Inc.*, 403 F.Supp. 1222 (D.Tenn.1975); *Sokol v. University Hospital, Inc.*, 402 F.Supp. 1029 (D.Mass.1975); *Spencer v. Community Hospital of Evanston*, 393 F.Supp. 1072 (N.D.Ill. 1975); *Schlein v. Milford Hospital*, 383 F.Supp. 1263 (D.Conn.1974), *aff'd*, 561 F.2d 427 (2d Cir. 1977); *Hoberman v. Lock Haven Hospital*, 377 F.Supp. 1178 (M.D.Pa. 1974); *Barrio v. McDonough District Hospital*, 377 F.Supp. 317 (S.D.Ill.1974); *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D.N. Y.), *aff'd mem.* 506 F.2d 1395 (2d Cir. 1974); *Slavcoff v. Harrisburg Polyclinic Hospital*, 375 F.Supp. 999 (M.D.Pa.1974); *Ozlu v. Lock Haven Hospital*, 369 F.Supp. 285 (M.D. Pa.1974), *aff'd mem.* 511 F.2d 1395 (3d Cir. 1975); *Allen v. Sisters of St. Joseph*, 361 F.Supp. 1212 (N.D.Tex.1973), *appeal dismissed*, 490 F.2d 81 (5th Cir. 1974); *Mulvihill v. Julia L. Butterfield Memorial Hospital*, 329 F.Supp. 1020 (S.D.N.Y.1971); *Wood v. Hogan*, 215 F.Supp. 53 (W.D.Va.1963).

(ii) *Governmental regulation :*

Plaintiffs might be able to show that CCMC is subject to a wide variety of state and federal regulations including stringent licensing requirements applicable to both the hospital and its physicians. As a matter of logic, such proof would be insufficient to maintain plaintiffs' state action allegations. As firmly established by the Supreme Court in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972), state action cannot be attributed to a private party simply because the party "is subject to state regulation in any degree 'whatever.'" The Seventh Circuit cogently summarized the significance of state and/or federal regulation in determining whether state action exists, in light of both *Moose Lodge* and *Jackson :*

> The Supreme Court has thus made clear that neither general government involvement nor even extensive detailed state regulation is sufficient for a finding of state action. Rather, the state must affirmatively support and be directly in-

volved in the specific conduct which is being challenged.

*Cannon v. University of Chicago*, 559 F.2d 1063, 1069 (7th Cir. 1976), *rev'd on other grounds*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

With the exception of the two aberrant classes of cases discussed below, courts have unanimously held that hospitals subject to extensive state and/or federal regulations do not, as a result, act under color of state law for purposes of section 1983. *Berman v. Florida Medical Center, Inc.*, 600 F.2d 466 (5th Cir. 1979); *Schlein v. Milford Hospital, supra; Cannon v. University of Chicago, supra; Briscoe v. Bock, supra; Taylor v. St. Vincent's Hospital, supra; Chrisman v. Sisters of St. Joseph of Peace, supra; Jackson v. Norton-Children's Hospitals, Inc., supra; Doe v. Bellin Memorial Hospital, supra; Ward v. St. Anthony Hospital, supra; Hodge v. Paoli Memorial Hospital, supra; Staelens v. Yake*, 432 F.Supp. 834 (N.D.Ill. 1977); *Hobbins v. Methodist Hospital of Madison*, 420 F.Supp. 773 (W.D.Wis.1976); *Holton v. Crozer-Chester Medical Center, supra; Greco v. Orange Memorial Hospital Corp., supra; Sament v. Hahnemann Medical College and Hospital, supra; Acosta v. Tyrone Hospital, supra; Sokol v. University Hospital, Inc., supra; Gerrard v. Blackman*, 401 F.Supp. 1189 (N.D.Ill.1975); *Spencer v. Community Hospital of Evanston, supra; Aasum v. Good Samaritan Hospital*, 395 F.Supp. 363 (D.R.1975), *aff'd*, 542 F.2d 792 (9th Cir. 1976); *Hoberman v. Lock Haven Hospital, supra; Barrio v. McDonough District Hospital, supra; Barrett v. United Hospital, supra; Ozlu v. Lock Haven Hospital, supra; Allen v. Sisters of St. Joseph, supra; Mulvihill v. Julia L. Butterfield Memorial Hospital, supra; Wood v. Hogan, supra.*

(iii) *Receipt of Medicare and Medicaid funds :*

Plaintiffs might also be able to show that CCMC has received Medicare and/or Medicaid funds over the years. As a matter of logic, such proof would be insufficient to maintain plaintiffs' state action allegations

for the same reasons noted earlier in connection with my discussion of Hill-Burton funding.

With the exception of the two classes of cases noted below, courts have unanimously held that receipt of Medicare and Medicaid funds by a hospital does not convert all of its actions into actions taken under color of state law. *Briscoe v. Bock, supra; Chrisman v. Sisters of St. Joseph of Peace, supra; Greco v. Orange Memorial Hospital Corp., supra; Doe v. Bellin Memorial Hospital, supra; Ward v. St. Anthony Hospital, supra; Place v. Shephard,* 446 F.2d 1239 (6th Cir. 1971); *Trageser v. Libbie Rehabilitation Center, Inc.,* 462 F.Supp. 424 (E.D. Va.1977), *aff'd,* 590 F.2d 87 (4th Cir. 1978); *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689 (N.D.Ohio 1977); *Berrios v. Memorial Hospital, Inc., supra; Staelens v. Yake, supra; Hobbins v. Methodist Hospital of Madison, supra; Holton v. Crozer-Chester Medical Center, supra; Sament v. Hahnemann Medical College and Hospital, supra; Acosta v. Tyrone Hospital, supra; Aasum v. Good Samaritan Hospital, supra; Spencer v. Community Hospital of Evanston, supra; Hoberman v. Lock Haven Hospital, supra; Barrett v. United Hospital, supra; Ozlu v. Lock Haven Hospital, supra; Allen v. Sisters of St. Joseph, supra; Wood v. Hogan, supra.*

(iv) *Tax-exempt status:*

Plaintiffs might be able to show that CCMC enjoys substantial benefits as a result of its tax-exempt status. As a matter of logic, such proof would be insufficient to maintain plaintiffs' state action allegations. Such an argument would, if extended to its logical limits, convert every private charity into a state agency for purposes of section 1983. I decline to read the civil rights statute in such a fashion. Further, mere proof that defendant CCMC enjoys such a status does nothing to establish the requisite nexus between the alleged government

involvement and the denial of specialized privileges of which plaintiffs are complaining.

With apparently no exception,[40] the courts have held that the tax-exempt status of defendant hospitals is insufficient as a matter of law to convert all of its actions into actions taken under color of state law. *Aasum v. Good Samaritan Hospital, supra; Briscoe v. Bock, supra; Taylor v. St. Vincent's Hospital, supra; Watkins v. Mercy Medical Center, supra; Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc., supra; Chrisman v. Sisters of St. Joseph of Peace, supra; Greco v. Orange Memorial Hospital Corp., supra; Ward v. St. Anthony Hospital, supra; Robinson v. Magovern,* 456 F.Supp. 1000 (W.D.Pa.1978); *Hodge v. Paoli Memorial Hospital, supra; Holton v. Crozer-Chester Medical Center, supra; Acosta v. Tyrone Hospital, supra; Sokol v. University Hospital, Inc., supra; Hoberman v. Lock Haven Hospital, supra; Barrett v. United Hospital, supra; Allen v. Sisters of St. Joseph, supra; Holmes v. Silver Cross Hospital, supra; Wood v. Hogan, supra.*

(v) *Monopoly status:*

Finally, plaintiffs might be able to show that CCMC, or some aspect of CCMC's operations, has achieved a monopoly status in a particular geographic region, presumably as a result of government regulation. As a matter of logic, such proof would be insufficient to maintain plaintiffs' state action allegations. The Supreme Court in *Jackson v. Metropolitan Edison Company* unequivocally established that a defendant's holding of a state-created monopoly, even a "public service" monopoly such as that of a hospital or utility, "is not determinative" in considering whether a defendant's action is in effect that of the state. *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453–54.

**40.** The only possible exception to this statement is the Fourth Circuit's decision in *Eaton v. Grubbs,* 329 F.2d 710 (4th Cir. 1964). In this decision, which was a Fourth Circuit case also decided before 1974, the court held that a tax exemption in addition to other factors *may* become significant in the state action inquiry.

With the exception of only one case,[41] the reasoning applied in the *Jackson* decision has repeatedly been followed by lower courts in holding that the occupation of a monopoly position by a private hospital does not transform its action into state action. *Schlein v. Milford Hospital, supra; Taylor v. St. Vincent's Hospital, supra; Holton v. Crozer-Chester Medical Center, supra; Barrett v. United Hospital, supra; Berrios v. Memorial Hospital, Inc., supra.*

The precedents cited above are contradicted by two limited lines of cases, both of which are clearly and conclusively distinguishable from the instant case, and neither of which was cited by plaintiffs in support of their claims. First, courts in the Fourth Circuit uniformly hold that receipt of Hill-Burton funds,[41a] the existence of extensive regulation, and/or receipt of Medicare and Medicaid funds is sufficient to support a finding of state action. *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638 (4th Cir. 1975); *Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512 (4th Cir. 1974); *Christhilf v. Annapolis Emergency Hospital Ass'n*, 496 F.2d 174 (4th Cir. 1974); *Sams v. Ohio Valley General Hospital Ass'n*, 413 F.2d 826 (4th Cir. 1969); *Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967); *Smith v. Hampton Training School for Nurses*, 360 F.2d 577 (4th Cir. 1966); *Eaton v. Grubbs*, 329 F.2d 710 (4th Cir. 1964); *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959 (4th Cir. 1963), *cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); *Large v. Reynolds*, 414 F.Supp. 45 (W.D.Va.1976); *Harron v. United Hospital Center*, 384 F.Supp. 194 (N.D.W.Va. 1974), *rev'd on other grounds*, 522 F.2d 1133 (4th Cir. 1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321 (1976). This line of cases has been recognized as idiosyncratic, and has been explicitly rejected in the Third Circuit. *See, e.g., Hodge*, 576 F.2d at 564. I therefore decline to follow these cases.

Second, some cases decided previous to 1974, before the Supreme Court decision in *Jackson v. Metropolitan Edison Company*, including one of my own earlier decisions, hold that receipt of Hill-Burton funds, the existence of extensive regulation, and/or receipt of Medicare and Medicaid funds justifies a finding that a private defendant acted under color of state law. *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140 (6th Cir. 1973); *Chiaffitelli v. Dettmer Hospital, Inc.*, 437 F.2d 429 (6th Cir. 1971); *Meredith v. Allen County War Memorial Hospital Commission*, 397 F.2d 33 (6th Cir. 1968); *Stanturf v. Sipes*, 335 F.2d 224 (8th Cir. 1964), *cert. denied*, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965), *overruled by Briscoe v. Bock*, 540 F.2d 392 (8th Cir. 1976); *Suckle v. Madison General Hospital*, 362 F.Supp. 1196 (W.D.Wis.1973), *aff'd on other grounds*, 499 F.2d 1364 (7th Cir. 1974), *questioned in Barrio v. McDonough District Hospital*, 377 F.Supp. 317 (N.D.Ill.1974); *Holmes v. Silver Cross Hospital*, 340 F.Supp. 125 (N.D.Ill.1972); *Bricker v. Sceva Speare Memorial Hospital*, 339 F.Supp. 234 (D.N.H.1972); *Citta v. Delaware Valley Hospital*, 313 F.Supp. 301 (E.D. Pa.1970), *overruled by Hodge v. Paoli Memorial Hospital*, 576 F.2d 563, 564 (3d Cir. 1978). Because the intervening Supreme Court decision in *Jackson* substantially tightens state action requirements, I do not

---

**41.** Only the 1968 case of *Meredith v. Allen County War Memorial Hospital Commission*, 397 F.2d 33 (6th Cir. 1968), holds that the existence of monopoly status alone justifies a finding that a private hospital has acted under color of state law. I decline to follow any pre-1974 precedent on the ground that the Supreme Court's decision in *Jackson* makes unpersuasive the reasoning of previously decided lower court decisions.

**41a.** Nine days after the original docketing of this opinion, a unanimous panel of the Court of Appeals for the Fourth Circuit retreated from the standard position of that circuit on the issue whether receipt of Hill-Burton funds is sufficient to support a finding of state action. In *Modaber v. Culpeper Memorial Hospital, Inc.*, 50 U.S.L.W. 2578 (Gen'l Apr. 6, 1982) (4th Cir. March 24, 1982), the court reached the conclusion, as have I, that the earlier Fourth Circuit precedent on this issue is incorrectly decided under the principles of *Jackson v. Metropolitan Edison Co.*

find any cases decided before 1974 particularly persuasive on this point. I am joined in my refusal to follow this pre-1974 precedent by the vast majority of courts considering the issue. *See Briscoe,* 540 F.2d at 395; *Holton,* 419 F.Supp. at 341.[42]

### b. Facts and circumstances test

My holding that proof of each hypothetical factual allegation alone would not be sufficient to justify a finding that defendants acted under color of state law is not dispositive of the state action issue. It is possible that, because the state action test is a "facts and circumstances" test, proof of several of the hypothetical factual allegations would be sufficient cumulatively to

support a finding that defendants acted under color of state law. I also hold, however, that under the facts and circumstances of this case, viewed in the light most favorable to plaintiffs, defendants are entitled to judgment on the pleadings as a matter of law.

First, neither plaintiffs nor defendants have been able to cite, and I have not been able to locate, a single post-1974 decision outside the Fourth Circuit that, under any set of facts and circumstances, has held that a private hospital has acted under color of state law for purposes of section 1983.[43] Most of the cases cited above involve proof by plaintiffs of more than one of the hypo-

**42.** In addition, as is noted in the citations above, at least two of these cases (*Stanturf* and *Citta,* my own previous case) have been expressly overruled by later court of appeals decisions in the applicable circuits. Further, one other case (*Suckle*) has been questioned in a later district court case.

**43.** Two cases outside the hospital field, involving universities, although arguably relevant, are distinguishable. *See Isaacs v. Board of Trustees of Temple University,* 385 F.Supp. 473 (E.D.Pa.1974); *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974).

In *Isaacs,* Judge Higginbotham held that, by reason of Temple's statutory incorporation into the Commonwealth of Pennsylvania's system of higher education, a substantial representation of the Commonwealth on the University's board of trustees, and the massive financial subsidies bestowed on the school to enable it to provide relatively inexpensive higher education to Pennsylvania residents, every decision made by Temple, including the termination of plaintiffs' employment, was action under color of state law for purposes of section 1983. 385 F.Supp. at 487–89. *Isaacs,* however, is distinguishable from any hospital case, even one involving a university hospital. *See Sament,* 413 F.Supp. at 440 (involving Hahnemann Hospital). Hospitals are not entwined so thoroughly into state educational systems, no statute incorporates CCMC or any other hospital into a state educational scheme, states do not provide disproportionate shares of funds to hospitals, and there is no allegation that any of CCMC's trustees are appointed by the Commonwealth.

Similarly, Judge Weiner's decision in *Rackin* involving the University of Pennsylvania is distinguishable from any hospital case, including one involving a university hospital. *See, e.g., Holton,* 419 F.Supp. at 341–42; *Sament,* 413 F.Supp. at 440–41. The court's holding that the University acted under color of state law in

*Rackin* was based on tax exemptions, state supported scholarships and loans, government support of research projects, ties to the City of Philadelphia, and the significant state involvement in the construction, leasing, and financing of the University's buildings. The extensive nature of these contacts allowed Judge Weiner to conclude that the state maintained a "stranglehold" on the operations of the University. *Rackin,* 386 F.Supp. at 1005.

*Rackin* is frequently distinguished from hospital cases as a result of the far more substantial relationships, in quantitative terms, found by Judge Weiner in the university setting than any court has ever found in the hospital setting. Most significantly, however, no court reviewing a claim that a hospital has acted under color of state law has ever been able to find sufficient evidence that the state maintains a "stranglehold" on the operations of the particular hospital at issue, with the correspondingly significant input into its policies, that enabled Judge Weiner to find state action in *Rackin.*

Because I am fully persuaded that the types of contacts and relationships found by Judges Higginbotham and Weiner in the university setting are never present in the hospital setting, I stand firm in my conclusion that no court considering the issue has ever found sufficient facts and circumstances to justify a finding that a private hospital has acted under color of state law for the purposes of section 1983. Significantly, both *Isaacs* and *Rackin* were decided just before the Supreme Court's 1974 decision in *Jackson v. Metropolitan Edison Co.* Because that case substantially tightened state action requirements, as discussed above, the analysis employed in cases decided before *Jackson* is subject to sharp scrutiny. As a result, I would decline to follow the *Isaacs* and *Rackin* analysis even if I found their facts indistinguishable from those in the instant case.

thetical factual allegations discussed. Thus, many of those cases stand for the proposition that even proof of a number of factual elements would be insufficient to support a finding that defendants acted under color of state law.

Second, my holding that, under the facts and circumstances of this case, defendants are entitled to judgment on the pleadings on the state action issue is fully supported by a comparison of plaintiffs' meager factual allegations, see part IV B supra, with the allegations deemed insufficient as a matter of law to support a finding of state action in a number of other representative cases. Most significantly, a comparison of plaintiffs' factual allegations on the state action issue in this case with the plaintiffs' allegations in Holton v. Crozer-Chester Medical Center, 419 F.Supp. 334 (E.D.Pa.1976), vacated on other grounds, 560 F.2d 575 (3d Cir. 1977), would be fruitful. In Holton, Judge Newcomer was asked to determine whether the actions of one of the defendants in the present case, CCMC, should be considered sufficient to constitute state action. After a review of the applicable legal authority in this area and the relevant facts concerning CCMC, the court determined that no state action was involved in connection with the CCMC policy requiring spousal consent for sterilizations.

With regard to the relevant facts surrounding the operation of CCMC, Judge Newcomer noted the following: (1) CCMC is a private, nonprofit hospital; (2) CCMC was built on privately donated land; (3) CCMC is administered on a day-to-day basis by a Board of Directors, none of whose members are government appointees; (4) CCMC had received more than one million dollars of Hill-Burton funds since 1963 for construction costs; (5) approximately eight percent of CCMC's operating budget was supplied by federal, state, or county grants; (6) in fiscal year 1975, CCMC received near-

ly ten million dollars in Medicare and Medicaid payments; (7) as a participant in the Hill-Burton program, and Medicare and Medicaid, CCMC was subject to numerous federal and state statutes and regulations; (8) contracts between CCMC and hospital insurers were subject to approval by the Pennsylvania Department of Insurance, and (9) CCMC was exempt from state and federal taxes. Notwithstanding these extensive contacts, which go far beyond anything in plaintiffs' current complaint in this case, the court concluded that the activity undertaken by CCMC and challenged by plaintiffs did not constitute state action. *Holton*, 419 F.Supp. at 341–42.[44]

The Third Circuit's opinion in *Hodge v. Paoli Memorial Hospital*, 576 F.2d 563 (3d Cir. 1978), aff'g 433 F.Supp. 281 (E.D.Pa. 1977), provides further support for my holding that plaintiffs' factual allegations in the instant case are insufficient. The Court of Appeals stated:

> We have determined to stand with the vast majority of Courts of Appeals and hold that the receipt of Hill-Burton construction funding, Medicare and Medicaid funds, and the existence of tax exemption, as well as state licensing requirements for non-profit hospitals, do not constitute state action under 42 U.S.C. § 1983.

*Id.* at 564.

### E. Appropriate Relief

Having determined that defendants are entitled to judgment on the pleadings on Count II of plaintiffs' complaint because of a failure sufficiently to aver factual allegations on the state action element of section 1983, the only issue remaining is whether plaintiffs' complaint should be dismissed with, or without, prejudice. For the reasons noted below, I hold that Count II of plaintiffs' complaint should be dismissed with prejudice.

---

**44.** Defendants represent in their brief that these facts regarding the operation of CCMC have not changed in any significant respect since 1976, when Judge Newcomer wrote his opinion. Because this is also an unsworn statement by counsel outside the pleadings and is not part of the record, I am not permitted to give it any credence. *See* note 34 *supra*. As a result, it is unclear whether these five-year-old figures remain accurate in 1981. Still, *Holton* stands as a conspicuous example of a case in which the court dismissed an action for failure to properly plead the state action requirement of section 1983 when the factual allegations were considerably more extensive than the allegations in the instant case.

██ Plaintiffs' complaint fits within the category of complaints that fail to meet even the minimal notice pleading requirements of the federal rules. *See* part II B *supra.* Further, plaintiffs' complaint fails to meet at least the more stringent Third Circuit pleading rules for civil rights cases, if not the more relaxed standard used in all other circuits. *See* part IV A *supra.* These two conclusions alone, however, would support only a dismissal without prejudice, notwithstanding the gross insufficiency of plaintiffs' complaint.

My holding that plaintiffs' complaint should be dismissed with prejudice is therefore based on two additional considerations. First, given the precedent discussed extensively above, I hold that plaintiffs' civil rights claim against CCMC, a private hospital, is *legally* deficient as it cannot be maintained under section 1983. I can imagine no amended complaint that could pass muster under the standards discussed above.

Second, permitting plaintiffs to engage in even limited jurisdictional discovery on a state action issue would run squarely contrary to the efficiency policy discussed in part II B *supra.* Plaintiffs have not suggested one single avenue of facts relevant to the state action determination that they intended to pursue through discovery. At oral argument, counsel for plaintiffs argued that he should be permitted to discover whether "there are specific restrictions imposed by the State of Pennsylvania that affect who may have a [Catheterization Lab or a Burn Lab]." *Oral Argument Re Defendants' Motion for Judgment on the Pleadings* 33.[45] Having held that this factual theory would be insufficient to establish that defendants acted under color of state law even if proved, it is unnecessary for me to grant plaintiffs discovery to explore that issue. Indeed, having held that even if plaintiffs can prove that CCMC receives government funds from Medicare, Medicaid, and Hill-Burton, has a federal and/or state tax exemption, is subject to extensive state and federal regulation, and maintains a monopoly position as a result of state regulations they will fail to state a cause of action under section 1983, there is no reason to subject both plaintiffs and defendants to the costly discovery process.

Thus, plaintiffs' complaint fits squarely into one category of cases for which summary disposition, without opportunity to amend or to engage in substantial discovery, is mandated by the federal rules. When plaintiffs' claims are legally deficient, no matter what set of facts could be proved in support of them, summary dismissal is appropriate. Indeed, some courts would consider it an abuse of the trial judge's discretion to permit such a case to remain in federal court. I decline to order such a wasteful procedure.[46]

## V. Conclusion

This case has presented complex questions of law for resolution by this court. The difficulty of the issues is the result of the need to balance two equally important policies underlying the Federal Rules of Civil Procedure. First, the rules contemplate that any party with a potentially viable claim should not be dismissed summarily merely because of a technical pleading error. On the other hand, the second policy within the federal rules requires complaints

---

**45.** Despite my continued requests of plaintiffs' counsel, this was the only avenue of discovery that he stated plaintiffs intended to pursue. At no point in these proceedings has any other potential avenue of discovery involving state action been suggested.

**46.** *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir. 1976), and *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), are both distinguishable from the instant case. In these cases, the Third Circuit reversed district court grants of dismissals with prejudice without leave to amend, notwithstanding the panels' recognition of the Third Circuit's special pleading rules for civil rights actions. But both *Rotolo* and *Kauffman* were pro se actions. The courts in both cases stated explicitly that they were balancing the special pleading requirements of *Negrich v. Hohn,* 379 F.2d 213 (3d Cir. 1967), against the protection of *pro se* litigants policy of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Because the instant case was not filed *pro se,* and because of my holding that permitting plaintiffs leave to amend would be a futile act, I do not believe that either *Rotolo* or *Kauffman* requires dismissal without prejudice here.

to meet certain minimal standards so that frivolous cases can be dismissed at the lowest cost possible to both the court system and the prospective defendant.

In this case, I was confronted with a complaint that, in my judgment, failed even to approach the minimal standards required by the Federal Rules of Civil Procedure. Even gross inadequacy of a complaint, however, does not always justify summary disposition of cases, particularly summary dismissals with prejudice. Count I of plaintiffs' complaint in this case fits within this category and is therefore dismissed without prejudice. In certain circumstances, however, gross inadequacy of a complaint, coupled with complete legal insufficiency of the claim, can justify a more permanent disposition. Count II of plaintiffs' complaint fits within this second category and is therefore dismissed with prejudice. An appropriate order follows.